**Arlene OTIS, Plaintiff–Appellant,**

v.

**CITY OF CHICAGO, Defendant–Appellee.**

No. 92–1342.

United States Court of Appeals,
Seventh Circuit.

Argued June 10, 1994.

Decided July 18, 1994.

---

Ramsay Laing Klaff, Ramsay Laing Klaff (argued), Chicago, IL, for plaintiff-appellant.

Amy E. Neuman, Frank B. Garrett, III, Robbins, Schwartz, Nicholas, Lifton & Taylor, Kelly R. Welsh, Julian Henriques (argued), Eileen Brewer, Benna R. Solomon, Office of the Corp. Counsel, Appeals Div., Chicago, IL, for defendant-appellee.

Before POSNER, Chief Judge, and CUMMINGS, BAUER, CUDAHY, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION, KANNE, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

We set this case for hearing en banc to decide whether an order dismissing the suit, but allowing the litigant an option of reinstatement, becomes a "final decision," and therefore may be appealed under 28 U.S.C. § 1291, once the time to use the option has expired. Our answer is "yes."

**I**

On August 1, 1989, the Commission on Chicago Landmarks laid off Arlene Otis. She filed this suit under Title VII of the Civil Rights Act of 1964, contending that the City acted because she is black rather than for its stated reason, lack of funds. The district court appointed counsel for Otis under 42 U.S.C. § 2000e–5(f)(1). Shortly before, Otis had failed to appear for a status conference and a scheduled deposition, setting a pattern that was to continue. Soon after the court provided her with a lawyer, Otis stood up counsel for both sides by not appearing for a rescheduled deposition, and she did not keep appointments with her lawyer.

The district judge instructed Otis to cooperate with her lawyer and informed her that "[f]ailure to cooperate with counsel will result in dismissal" of the case. Shortly after receiving this warning, Otis skipped an appointment with her lawyer and appeared an hour late for her deposition. The deposition could not be completed and was rescheduled. On December 11, 1990, the date to which the deposition had been continued, Otis did not attend. Her lawyer asked the court for leave to withdraw; the City asked the court to dismiss the case as a sanction. Otis apologized for her conduct and promised to cooperate in the future, thrice vowing: "I won't miss any more dates." The judge denied

both motions, instructing Otis to be at her lawyer's office at 9:00 A.M. on January 8, 1991, and to complete her deposition the next day. The judge explicitly warned: "[I]f you miss any of those dates, your case is over." Otis came at 10:30 A.M., by which time her lawyer was in another meeting, but did complete the deposition on January 9.

At a status hearing on February 6 plaintiff's counsel informed the court that the City had satisfied its discovery obligations but that Otis needed to complete her answers to the City's interrogatories. Two weeks later counsel renewed his motion to withdraw, telling the court that Otis had missed one more appointment and arrived so late for another that it had been impossible to meet with her. Counsel told the judge that Otis also had not supplied the information necessary for him to answer the City's interrogatories. This time the judge permitted the lawyer to withdraw and informed Otis that he would not appoint another:

> I am sorry, Ms. Otis, but I can only go so far to ask the members of the bar to use their free time to help people like you, and you have only yourself to blame for the fact that I am granting this motion. I am sorry, but counsel is given leave to withdraw and you will have to represent yourself, unless you are able to hire an attorney.

Otis did not find another lawyer on her own, and she did not complete her discovery obligations.

At a status hearing on March 27, 1991, Otis told the judge that there had been a fire in her apartment and that she had become homeless. She did not appear for the next status hearing, but she apparently learned that the court had set a discovery cutoff date of May 8, 1991, for on that date she produced her answers to the City's first set of interrogatories. In response to all 15 questions after the first (which solicited her name and address), she wrote: "I cannot answer this question at this time due to extreme emotional distress." She ignored the single query in the City's second round of interrogatories, and she did not furnish any of the documents Chicago requested. The City asked the court to dismiss the case for failure to complete discovery, and the court granted this motion.

Otis told the judge at a hearing on July 11 that she was homeless, that she was being treated for depression and emotional distress, and that she had been unsuccessful in her quest for another lawyer and was unable to proceed on her own. The judge expressed sympathy but remained unwilling to conscript another lawyer for a person who had failed to cooperate with the first. Believing that the City was entitled to prevail on the current record, but seeking to offer Otis a chance to continue if she were to recover from her depression or locate a lawyer, the court gave each side part of what it wanted. The judge told Otis that he would grant the City's motion and dismiss the case but that he would reinstate the suit if, within six months, she answered the City's interrogatories. On July 15, 1991, the court entered this order:

> Defendant's continued motion to dismiss case for failure of plaintiff to comply with court's order is granted. Order cause dismissed with leave to plaintiff to move on properly noticed motion for leave to reinstate case provided that plaintiff has delivered to defendant signed answers to outstanding discovery requests. Motion for leave to reinstate case must be noticed for hearing on or before January 11, 1992.

The preprinted form used for miscellaneous orders in the Northern District of Illinois has two check boxes, one marked "Judgment is entered as follows:" and the other "[Other docket entry:]". The clerk checked the latter box.

Otis did not file any papers between July 15, 1991, and January 11, 1992. When January 12 arrived, the district court took no action. It did not then enter a judgment under Fed.R.Civ.P. 58 and has not done so since. On February 10, 1992, Otis filed a notice of appeal.

## II

Unfortunately, this case became dormant in the district court without the benefit of a final judgment under Rule 58. Two factors jointly produced this.

First, the district court dismissed the case with leave to reinstate. Dismissal with leave to reinstate is rare outside the Northern District of Illinois. Because the conditional ability to revive the case renders the dismissal a disposition without prejudice, neither side may appeal immediately. *Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1304–06 (7th Cir.1988). Jurisdictional problems often ensue. *Adams v. Lever Bros. Co.*, 874 F.2d 393 (7th Cir.1989). If the case cannot be appealed now, when may it be appealed? Does either side need to obtain an additional order from the district judge, or does the dismissal convert to one "with prejudice" once the time to fulfil the condition has expired? If an additional order is required, what if the district judge neglects to enter it? Does this cast the case into limbo, from which the loser has no escape? If a conditional dismissal eventually becomes appealable, when? What of the possibility, discussed in *Adams*, that when the decision becomes "final" on expiration of the time to reinstate, the time to appeal has already expired, because it ran from entry of the order?

■ Pitfalls and imponderables of this kind—this catalog is not exclusive—make the use of conditional dismissals problematic. On rare occasions dismissal with leave to reinstate may serve a legitimate purpose, but most of the time both litigants and courts would be better off if the judge announced a plan to dismiss in the future unless something happened. Here, for example, the judge could have said that unless by January 11, 1992, Otis answered the defendant's interrogatories, he would dismiss the case with prejudice. Casting the order in this fashion would have induced the court to schedule a status conference for January 12, which would have led to the entry of a proper final judgment if Otis had not satisfied her obligations by then. One difference between a dismissal with leave to reinstate and a continuance with dismissal in store if a step is not taken is that the immediate dismissal makes the district court's statistics look better. Never should a court jeopardize a litigant's rights for the purpose of burnishing its own reputation. We trust that district judges will be careful to use this device only when it

serves a legitimate function that cannot be achieved in other ways.

■■ Second, after the time to reinstate the case had expired, the district court did not enter a judgment. Rule 58 provides that every case must end with a formal judgment on a separate document. For some years, the Northern District of Illinois has been less than punctilious in observing this requirement. Although minute orders pepper the record, cases often peter out without the clarity that a Rule 58 judgment produces. Rule 58 is designed to produce a distinct indication that the case is at an end, coupled with a precise statement of the terms on which it has ended. It should be a self-contained document, saying who has won and what relief has been awarded, but omitting the reasons for this disposition, which should appear in the court's opinion. E.g., *Reytblatt v. Denton*, 812 F.2d 1042 (7th Cir.1987); *Foremost Sales Promotions, Inc. v. Director, BATF*, 812 F.2d 1044 (7th Cir.1987). In this case the district court should have entered a judgment on January 12, 1992, stating something like: "The suit is dismissed with prejudice, and plaintiff shall take nothing by her complaint." See Fed.R.Civ.P. Form 32. That would have prepared the way for an appeal, marking the time and terms of the litigation's end.

■ Rule 58 puts the onus of preparing a judgment squarely on the shoulders of the clerk of the district court. When docketing the minute order on July 15, 1991, the clerk should have entered into the court's automated docket system a tickler marking January 11, 1992, as an important date. If by then Otis had filed nothing, the clerk should have followed Rule 58(1):

> [U]pon a general verdict of a jury, or upon a decision by the court that a party shall recover only a sum certain or costs or that all relief shall be denied, the clerk, unless the court otherwise orders, shall forthwith prepare, sign, and enter the judgment without awaiting any direction by the court[.]

By January 12, 1992, it had become clear that "all relief shall be denied", so the clerk should have entered a take-nothing judgment "without awaiting any direction by the

court". Complying with Rule 58(1) when the court contemplates a deferred judgment is of course harder than complying when the court orders immediate entry of judgment; this is yet another reason why district judges should be leery of conditional dismissals. Nonetheless, the advent of automated docket-tracking systems should permit courts to produce proper judgments even when cases follow unusual paths, and we hope that the judges and staff of the Northern District of Illinois will take steps to ensure compliance with Rule 58.

■ If the district court provides for conditional dismissal and neglects to enter a Rule 58 judgment, may the plaintiff appeal? This circuit has developed two lines of cases, which are hard to reconcile.

One series of cases emphasizes that the only obstacle to appealing the initial order dismissing the case is that the potential for satisfying the condition renders the dismissal one without prejudice. When the condition is no longer satisfiable, the dismissal becomes one with prejudice, hence final, and thus appealable. For example, in *Harris v. Milwaukee County Circuit Court*, 886 F.2d 982 (7th Cir.1989), the district judge dismissed the complaint as frivolous under 28 U.S.C. § 1915(d) but allowed the plaintiff 20 days in which to pay the docket fee and added that, if the time passed without payment, the order would "ripen" into a final decision without further action. We concluded that such a decision is an appealable judgment. Accord, *Schoenberger v. Oselka*, 909 F.2d 1086 (7th Cir.1990). We have entertained appeals in similar cases when the district judges did not use that formulation. E.g., *Kaplan v. Zenner*, 956 F.2d 149, 150 n. 1 (7th Cir.1992) (treating the expiration of time as making the prior order of dismissal "final"); *Adams*, 874 F.2d at 394–95 (treating the expiration of the time to reinstate as sufficient for finality).

Another group of cases, however, emphasizes that until the court has entered a Rule 58 judgment or expressly indicated that none is contemplated—as by using "ripening" language—it is always possible for the court to change its mind, which prevents the dismissal from becoming a final decision. So, for example, we held in *Hatch v. Lane*, 854 F.2d 981, 982 (7th Cir.1988), that an order dismissing a complaint but allowing the plaintiff to file an amended complaint within a specified time did not become a final decision when the time expired. Accord, *Strasburg v. State Bar of Wisconsin*, 1 F.3d 468, 472–73 (7th Cir.1993) (questioning whether *Harris* was correctly decided); *Grantham v. McGraw–Edison Co.*, 444 F.2d 210 (7th Cir.1971). See also *In re Behrens*, 900 F.2d 97, 100–01 (7th Cir.1990) (the expiration of time to object to a petition for attorneys' fees in a bankruptcy case did not make the award of fees final).

In approaching this subject anew, we are guided by three decisions of the Supreme Court: *Shalala v. Schaefer*, —— U.S. ——, ——, 113 S.Ct. 2625, 2632, 125 L.Ed.2d 239 (1993); *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978); and *The Three Friends*, 166 U.S. 1, 49, 17 S.Ct. 495, 497, 41 L.Ed. 897 (1897). In *The Three Friends* the district court entered an order specifying that the complaint (actually the libel in admiralty, but the distinction does not matter) was to stand dismissed unless amended within 10 days. Without waiting for the entry of a final judgment (or even the expiration of the 10 days), plaintiff appealed. Addressing the argument that the lack of either amendment or judgment made the decision non-appealable, the Court replied that the appeal itself "was an election to waive the right to amend and the decree of dismissal took effect immediately." 166 U.S. at 49, 17 S.Ct. at 497. *The Three Friends* has given rise in other courts of appeals to the doctrine of springing finality that permits a litigant to appeal from any order that conditions further proceedings on action within a specified time.

According to the second circuit, when a district court enters an order dismissing a complaint but permitting the plaintiff to supplement the answers to interrogatories within 14 days, which will lead to reinstatement, the expiration of the time means that "[t]he way for compliance is no longer open. No possibility, therefore, exists of later compliance and piecemeal appeal", making the order appealable without ado. *Cleary Brothers v. Christie Scow Corp.*, 176 F.2d 370, 372 (2d

Cir.1949). *Cleary* is a close parallel to our case. Although like *The Three Friends* it predates the current version of Rule 58, the second circuit does not think this important. It applied *Cleary* most recently in 1990, hearing an appeal from an order dismissing a complaint with leave to replead in a specified time. After the time expired the plaintiff appealed. The court held that the expiration of the time was enough to make the judgment appealable. *Festa v. Electrical Workers,* 905 F.2d 35, 37 (2d Cir.1990). It did not insist on a judgment under Rule 58 or even on language saying that failure to replead automatically converts the original decision into a final judgment.

Courts elsewhere follow the same approach. In *Schuurman v. Motor Vessel Betty K V,* 798 F.2d 442 (11th Cir.1986), the district court dismissed a complaint with leave to amend within 20 days. Plaintiff failed to amend, then appealed within 30 days of the expiration of the allotted time. Unless the expiration of the time made the decision final, the appeal should have been dismissed as premature; unless the time for appeal ran from the expiration of the 20 days, the appeal should have been dismissed as untimely. The eleventh circuit held the appeal proper because the decision became final, and the time to appeal commenced, when the 20 days expired—and without any need for a Rule 58 document. It explained: "For appeal purposes, . . . the order of dismissal in this situation becomes final upon the expiration of the time allowed for amendment." 798 F.2d at 445. Such an approach, the court believed, simultaneously protects litigants' interests and avoids uncertainty—not to mention complicated appellate maneuvering. Accord, *Van Poyck v. Singletary,* 11 F.3d 146 (11th Cir.1994); *Hertz Corp. v. Alamo Rent–A–Car, Inc.,* 16 F.3d 1126, 1132 (11th Cir. 1994). See also *Shapiro v. UJB Financial Corp.,* 964 F.2d 272, 278–79 (3d Cir.1992).

These cases do not reflect an insouciant attitude toward Rule 58. Rather, they find strong support in *Mallis* and *Schaefer,* which conclude that "a formal 'separate document' of judgment is not needed for an order of a district court to *become* appealable." *Schaefer,* —— U.S. at ——, 113 S.Ct. at 2632 (em-

phasis in original). Before *Mallis* a number of courts had held that an appeal is impossible unless the district court has complied with Rule 58. The Supreme Court disagreed, concluding that because § 1291 allows an appeal from a final "decision," it is unnecessary to wait for the final "judgment" once it has become clear that the litigation is over. In *Mallis* the district court's opinion specified the relief; when the court neglected to enter a Rule 58 judgment, the loser appealed, and the Supreme Court held that the court of appeals had jurisdiction. We have understood *Mallis* to establish the proposition that when the end of the case has arrived, formal defects in the terminating order do not prevent appeal. A series of our cases holds that when, from a practical perspective, the case is over, the loser may appeal. E.g., *Eberhardt v. O'Malley,* 17 F.3d 1023, 1024 (7th Cir.1994); *Tobey v. Extel/JWP, Inc.,* 985 F.2d 330, 331 (7th Cir.1993); *Alpine State Bank v. Ohio Casualty Insurance Co.,* 941 F.2d 554, 557–59 (7th Cir.1991); *Soo Line R.R. v. Escanaba & Lake Superior R.R.,* 840 F.2d 546, 549 (7th Cir.1988).

An appeal from a conditional order of dismissal fits comfortably within *Mallis* and *Schaefer.* We know who won (the defendant) and the terms of the disposition (the plaintiff takes nothing). Once the time to satisfy the condition has expired, the order is "final" by any standard other than one making the entry of a Rule 58 judgment indispensable—and we know from *Mallis* and *Schaefer* that a Rule 58 judgment is not the *sine qua non* of appeal. It has been clear since *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), that § 1291 permits appeals from final "decisions" that are not final "judgments." See also *Digital Equipment Corp. v. Desktop Direct, Inc.,* —— U.S. ——, —— – ——, 114 S.Ct. 1992, 1995–96, 128 L.Ed.2d 842 (1994). The practical approach of *Mallis* and *Schaefer* makes sense in cases such as ours. The district court said as clearly as could be that it did not plan to revisit the case unless Otis answered the interrogatories by January 11, 1992. Waiting for a formal Rule 58 judgment would not serve any purpose, but could well frustrate appellate review. Arlene Otis has no idea what Rule 58 might be, and she

is unprepared to cope with the tension between our opinions in *Harris* and *Hatch.* Requiring her to ask the district court for a Rule 58 judgment—and to seek a writ of mandamus if the judge does not supply the necessary document—would be the practical equivalent of denying her the right of appellate review. If Otis herself overcame the obstacle, others in her position would not, and all would suffer unnecessary delay.

For the same reason that we believe a Rule 58 judgment unnecessary, we conclude that the use of explicit "ripening" language is not essential to jurisdiction. Helpful it certainly would be, but language of this kind is unrelated to jurisdiction. This case is indubitably over in the district court. If there were to be any jurisdictional hurdle beyond the announcement of the winner and the terms, it would be the *entry* of some document on the docket of the court. 28 U.S.C. § 2107. Language saying that a dismissal will become final does not add anything to the combination of dismissal and a time certain for fulfilling a condition, and a magic-words approach to jurisdiction sets the same snares we have already discussed.

Treating the order dismissing the case as the appealable order, with finality springing into existence when the time to satisfy the condition expires, not only protects litigants' rights while avoiding the need to take unnecessary steps but also is consistent with modern practice. Since 1979, Fed.R.App.P. 4(a)(2) has permitted losing parties to appeal immediately after the announcement of the judgment, even if the court has yet to enter the proper document. See *FirsTier Mortgage Co. v. Investors Mortgage Insurance Co.,* 498 U.S. 269, 111 S.Ct. 648, 112 L.Ed.2d 743 (1991), holding that the losing side may appeal as soon as the district court announces a disposition that, if properly memorialized in a judgment, would be appealable. Similarly, the 1993 amendment to Fed.R.App.P. 4(a)(4) permits a party to appeal while a motion for reconsideration (or other motion suspending the finality of the judgment) is pending. The appeal takes effect once the disposition of the motion makes the decision "final." This amendment was designed to avoid a trap that caused appeals

filed before the disposition of a motion for reconsideration to self-destruct and thereby cost many parties, who were not keenly aware of the niceties of appellate practice, any opportunity for review. See *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982); *Alerte v. McGinnis,* 898 F.2d 69 (7th Cir. 1990). The theme of the 1979 and 1993 amendments is that decisions may become final and appealable after their announcement or entry, and that to preserve the right of appellate review courts should permit parties to appeal either before or after the technical date of "finality."

However attractive the "springing finality" approach may be, Chicago submits, it is beyond our power to adopt in light of *Jung v. K. & D. Mining Co.,* 356 U.S. 335, 78 S.Ct. 764, 2 L.Ed.2d 806 (1958). The district court dismissed the complaint and granted plaintiffs 20 days to file an amended complaint. They did not file a new complaint within the 20 days; indeed, they did not do anything for two years. Soon after plaintiffs filed a document standing on their existing complaint, the district court entered a Rule 58 judgment, from which plaintiffs promptly appealed. The second circuit dismissed the appeal, reasoning that the decision became final once the 20 days expired, rendering the plaintiffs' appeal approximately two years out of time. The Supreme Court reversed in turn, concluding that the conditional order "did not constitute the final judgment in the case." 356 U.S. at 337, 78 S.Ct. at 766. Not until two years later did the district court enter a "real" final judgment, making the appeal timely. This leads Chicago to contend that Otis may not appeal until she has procured a Rule 58 judgment.

Chicago's position reflects a common confusion. It assumes incorrectly that the maximum number of opportunities to appeal is one. By holding that Jung *could* appeal from the delayed Rule 58 judgment, Chicago believes, the Supreme Court necessarily concluded that Jung *could not* have appealed from the earlier order. That might be so if § 1291 allowed appeals only from final "judgments", but the statute actually speaks of final "decisions", and the collateral-order

cases beginning with *Cohen* show that final "decisions" may occur in advance of final "judgments." *Jung* did not consider whether a prior appeal would have been possible; it held only that an appeal within 30 days of the Rule 58 judgment is timely.

*Jung* is a precursor to *United States v. Indrelunas*, 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973). Until 1963 litigants occasionally forfeited their right to appeal because they could not be sure when the time started to run. An amendment to Rule 58 in that year strengthened the "separate document" requirement to mark more precisely the beginning of the time for appeal. Some courts, adopting the position Chicago advances in our case, held that the time to appeal may run without a Rule 58 judgment when the outcome is clear—for example, when the court makes a docket entry specifying the relief, even though it refrains from entering a Rule 58 judgment. The Supreme Court responded in *Indrelunas* with the holding that a party who waits for the separate judgment always is protected. 411 U.S. at 221–22, 93 S.Ct. at 1564–65. Five years later came *Mallis*. This time the loser promptly appealed from the docket entry, and the prevailing party argued that the loser must await the separate judgment. The Court said no: once the relief is known and the case securely done, the loser may appeal without delay. These cases collectively safeguard the opportunity to appeal. If the loser appeals at once, the case proceeds without a pointless remand; if she waits until the formal judgment, she is secure against forfeiture. *Mallis* emphasized this element of *Indrelunas*. 435 U.S. at 386, 98 S.Ct. at 1121. Whether a court of appeals believes, with illumination of hindsight, that at some point preceding the Rule 58 judgment the case "really" ended is irrelevant. See, e.g., *In re Kilgus*, 811 F.2d 1112 (7th Cir.1987); *Stelpflug v. Federal Land Bank of St. Paul*, 790 F.2d 47 (7th Cir.1986); *Parisie v. Greer*, 705 F.2d 882, 891–92 (7th Cir.1983) (en banc) (opinion of Eschbach, J., for a majority on this point). "A party safely may defer the appeal until Judgment Day if that is how long it takes to enter the document." *Kilgus*, 811 F.2d at 1117. That is what *Indrelu-*

*nas* holds, and it is the principle for which *Jung* stands.

Even if Chicago's understanding of *Jung* were correct, Otis would retain an opportunity to obtain appellate review. She could ask the district court to enter a Rule 58 judgment from which she could appeal, even though this appeal would come years after the case was effectively over in the district court. Victorious litigants wishing to write *finis* to the case would do well to ensure that the district court adheres to Rule 58. We suspect that both district judges and prevailing parties will become more attentive to that rule after today's decision.

■ One final contention calls for discussion. Chicago reminds us of 28 U.S.C. § 2107(a):

> Except as otherwise provided in this section, no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days of the entry of such judgment, order or decree.

The district court's minute order of July 11, 1991, was entered on the docket on July 15. Chicago contends that, if this order was indeed an appealable decision, the notice of appeal had to be filed by August 14. (None of the extensions allowed by § 2107 applies.)

■ "Entry" of a judgment usually means its recording on the docket of the court. In consequence, a litigant entitled to appeal under the collateral order doctrine must act within 30 days and if this time expires without appeal must wait until the final judgment to pursue the issue. *SEC v. Quinn*, 997 F.2d 287, 290 (7th Cir.1993); *Weir v. Propst*, 915 F.2d 283, 286 (7th Cir.1990). Otis, however, is not trying to appeal from the state of things as they were in July 1991. The document recorded on July 15 was postdated, holding open the possibility of action until January 11, 1992. For the same reasons that lead us to adopt the concept of "springing finality" for such orders, we believe that "entry" should be deemed to occur on the date the condition is satisfied or the time to satisfy it ends. Otherwise the plaintiff is ensnared—if she tries to comply with the

conditions, she is apt to forfeit the opportunity to appeal, and if she tries to preserve her appellate rights she gives up the opportunity to reinstate the litigation in the district court. Section 2107 is designed to restrict parties to 30 days from the entry of an appealable order to take an appeal, not to ensure that the time for appeal ends before the opportunity to appeal begins. Otis appealed within 30 days of the time the district court's order became appealable.

We overrule *Hatch, Strasburg,* and *Grantham* to the extent they forbid an appeal from a conditional order of dismissal after the time to satisfy the condition has expired. In the process, we eliminate the conflict among the circuits that these opinions engendered. We need not decide whether a party may appeal before the running of the time on the theory (as in *The Three Friends*) that a notice of appeal is tantamount to a declaration that the condition will never be satisfied, making the order "final" forthwith. Litigants, especially those without the aid of counsel, may be confused about the right means to secure appellate review, and deeming the notice of appeal a waiver of the opportunity to satisfy the condition may cause them to forfeit valuable entitlements. Otis waited until the time had run, and we need not decide today what would have happened if she had appealed earlier.

### III

██ Appellate review of orders dismissing litigation for want of prosecution is deferential, *Roland v. Salem Contract Carriers,* 811 F.2d 1175, 1177 (7th Cir.1987), and we conclude that the district court did not abuse its discretion.

██ All questions about counsel to one side, the district court undoubtedly was entitled to dismiss the suit. It required five efforts to obtain Otis's deposition: she failed to appear at three and was late to a fourth. She failed to answer interrogatories or supply documents. Plaintiffs must submit to discovery in litigation they initiate, and failure to do so leads straight to dismissal. *Newman v. Metropolitan Pier & Exposition Authority,* 962 F.2d 589 (7th Cir.1992). Although not required to do so, *Link v. Wa-*

*bash R.R.,* 370 U.S. 626, 632, 82 S.Ct. 1386, 1389–90, 8 L.Ed.2d 734 (1962); *Ball v. Chicago,* 2 F.3d 752, 755–56 (7th Cir.1993), the district judge twice warned Otis that continued lack of cooperation would lead to the end of her suit. The judge displayed considerable forbearance, affording the plaintiff more opportunities than were accorded in other recent cases in which we have sustained dismissals or default judgments. E.g., *Brill v. McDonald's Corp.,* 28 F.3d 633 (7th Cir. 1994); *United States v. Golden Elevator Co.,* 27 F.3d 301 (7th Cir.1994); *United States v. 7108 West Grand Avenue,* 15 F.3d 632 (7th Cir.1994). Not until Otis declared in open court that she was unable to prosecute the case did the district judge dismiss it—and even then he allowed six months for plaintiff to recover from her depression or engage another lawyer.

██ Otis contends that, once the district court realized that she could not carry on alone, the court should have appointed a second lawyer to assist her, and that with the aid of another lawyer she could have avoided dismissal. Again our review is deferential, *Darden v. Illinois Bell Telephone Co.,* 797 F.2d 497, 500 (7th Cir.1986), and again we believe that the district court did not abuse its discretion.

The district judge observed that Otis had not cooperated with her first lawyer and concluded that a litigant who wastes the time of one practitioner cannot expect the court to put another lawyer's time at her disposal. Section 2000e–5(f) does not require judges to provide unlimited legal aid to indigent civil rights litigants. Members of the bar have other clients with claims that also require attention. Before diverting this limited time to a plaintiff under Title VII, the district judge should ensure that it will be well used. Reallocating legal time to an indigent plaintiff may be imprudent for many reasons—for example, if the case is weak (implying that the judge would be taking time away from other clients with good cases and directing lawyers to devote it to persons with poor ones), or if the time will not be well spent in the new endeavor. The district judge understandably had doubts on both scores. Otis

did not use well the time that had been provided to her, and there was also little reason to believe that with additional legal assistance she could make a strong case on the merits. When moving to withdraw, Otis's lawyer observed that on the current state of the record he could not sign the pretrial order consistent with Fed.R.Civ.P. 11—in other words, that he believed Otis's claim frivolous on the merits. Nothing in the record of this case suggests that Otis has a claim that could survive a motion for summary judgment.

Recent opinions stress that litigants' principal resource is the willingness of the bar to supply aid, not the power of the court to conscript it. *Farmer v. Haas,* 990 F.2d 319 (7th Cir.1993); *Jackson v. County of McLean,* 953 F.2d 1070 (7th Cir.1992). After Otis's first lawyer withdrew, the district judge told her to seek counsel who would represent her voluntarily. People claiming to have been injured by defective products must persuade lawyers to take their cases, and as a rule people claiming to have been injured by violations of Title VII also should abide the judgment of the bar about whose case is strongest. If a person has trouble getting a lawyer because the bar is hostile to civil rights claims, or because the anticipated attorneys' fees are insufficient, then there is a stronger reason to appoint counsel. But a large bar is engaged in Title VII practice. This bar brings many cases, some with excellent chances and some marginal. This court has not been flooded with colorable cases, prosecuted *pro se,* that leave us wondering why no member of the bar would assist. Experience leads us to rely on the care of the legal profession and sound discretion of the district courts to decide when cases should proceed with appointed counsel.

To this Otis replies that the district judge did not explicitly recite the considerations commended by *Darden,* and that lack of cooperation with counsel is not on *Darden's* list. This just shows, however, the danger of treating judicial opinions as if they were statutes. The question at issue in *Darden* was whether the district court had given adequate consideration to a litigant's request for counsel. Here the district court not only considered the request but also appointed counsel. *Darden* did not ask what would have happened had appointed counsel withdrawn because of lack of cooperation. Like the district judge, we believe that this is a different matter entirely, and that a plaintiff who squanders her opportunity has no entitlement to a second chance. A litigant who receives something for free may treat it as if it were worthless. The district court knew better and stressed that legal time is a limited resource; allocating more of it to Otis means less of it for other litigants, who are no less deserving.

▮ One final subject and we are done. Otis contends that she did not have the full benefit of legal assistance, because her appointed lawyer was laboring under a conflict of interest. After the district court appointed him, the lawyer wrote to Otis, with copy to the City:

> Before undertaking your representation, you should know that [the law firm of which I am a partner] on occasion represent[s] the City of Chicago in matters not related to claims of employment discrimination. Before I can undertake to represent you, I must obtain agreement from both you and the City of Chicago that I can represent you in this case, and that you waive any conflict of interest that I might have by reason of [representing] the City in other matters.

Chicago promptly waived in writing any entitlement it had to prevent the lawyer from representing Otis; Otis herself did not reply to this letter, and her current attorney contends that her silence means that the first lawyer never properly became her counsel. It is not clear to us that there was any actual conflict; we do not know, for example, whether the attorney's law firm had Chicago as a client at any time during his representation of Otis. What is more, by objecting to the attorney's motion to withdraw, a motion made well after she received notice, Otis waived any right she possessed to a lawyer whose firm had no ties to her adversary. Otis has had ample opportunity to prosecute this suit, and the district court properly brought it to a close.

AFFIRMED.

**1170**

CUDAHY, Circuit Judge, concurring in the judgment.

I am pleased to join Judge Rovner's very perceptive concurrence in the judgment. And it seems to me that Judge Hart handled this case in exactly the right way. In addition, I support, at least in principle, the majority's effort to rise above "magic words" in assessing appealability. Unfortunately, I am afraid that the effort to divine a "clear intention" to end a case without some recourse to "magic words" will be easier said than done. But it is an experiment worth trying.

ROVNER, Circuit Judge, with whom CUDAHY, Circuit Judge, joins, concurring in the judgment.

Although I am convinced that we should accept jurisdiction over this appeal and that the district court did not abuse its discretion in dismissing Otis' case, I write separately to address two aspects of the court's opinion with which I cannot agree. First, I believe the court's discussion of the allegedly conflicting lines of authority in this circuit exaggerates the extent of any differences in our cases. And second, I am uncomfortable with the court's comments on the practice of dismissing cases with leave to reinstate in the Northern District of Illinois.

A.

I am less sanguine than the majority that our existing cases can so easily be assigned to distinct and competing camps. (*See ante* at 1163–1164.) In my view, our cases are in large measure consistent, and absent the changes we adopt today, those cases would indicate that we have no jurisdiction over this appeal. In *Hatch v. Lane*, 854 F.2d 981 (7th Cir.1988), for example, the case most factually similar to this one, the district court dismissed the plaintiff's complaint without prejudice to the filing of an amended complaint within thirty days. As in the present case, the court's conditional dismissal order did not specify that it would ripen into a final judgment at the conclusion of the thirty-day period. We therefore held that the passage of that period "did not ... convert the district court's nonfinal decision into a final order."

*Id.* at 982. Moreover, we indicated that because the requisites of Rule 58 had not been met, "no final appealable order [was] before th[e] court." *Id.* Instead of merely providing a time limit for the filing of an amended complaint, we explained that the district court should have taken an important additional step—it should have instructed the clerk in its conditional order to enter a Rule 58 judgment if the plaintiff failed to file an amended complaint within thirty days. *Id.*; see also *Grantham v. McGraw–Edison Co.*, 444 F.2d 210, 212 (7th Cir.1971) (order dismissing with leave to reinstate not a final order as it did not terminate the litigation on the merits).

On the heels of *Hatch* came *Harris v. Milwaukee County Circuit Court*, 886 F.2d 982 (7th Cir.1989). The majority sees some tension between *Hatch* and *Harris*, as it assigns those cases to competing camps. But *Hatch* and *Harris* are easily reconciled; indeed, Judge Posner's opinion in *Harris* distinguished the language of the dismissal order there from the order we had considered in *Hatch*. The *Harris* order provided the plaintiff twenty days to pay the required filing fee, and "[i]f this deadline passes without the filing fee [being] paid, this order will ripen into a final judgment of dismissal without further order." 886 F.2d at 983. *Harris* held that this dismissal became an appealable final judgment by its own terms at the expiration of the twenty-day period. *Id.* at 984. Yet *Harris* made clear that:

[t]he form of order used in this case should be distinguished from that held not to create an appealable judgment in *Hatch v. Lane*, 854 F.2d 981, 981–82 (7th Cir. 1988).... An order that simply dismisses a case with leave to replead is not a final judgment, because it does not end the litigation. It is true that the form of order in *Hatch* implied that if the plaintiff did not file a particular type of amended complaint within thirty days, the case would be over. *But there was no direction to that effect, and we thought that in such a case a final judgment order should be required.* Here the district judge stated that his order would become a final judgment on a specified date unless a specified contingen-

cy occurred, and the contingency did not occur so the order became a final judgment on the specified date according to its terms. This was an unorthodox but not an improper method of complying with Rule 58's requirement of a separate judgment order, although an explicit final judgment order would have been better. The order in *Hatch* was more oblique, and crossed the line.

*Id.* (citation omitted, emphasis added). The dichotomy that emerges from *Hatch* and *Harris* emphasizes the terms of the particular dismissal order at issue, and in particular, whether the order notifies the parties that the case will end automatically when the reinstatement period expires. We followed that dichotomy consistently in subsequent cases, and until today, it remained the law of this circuit. *See Strasburg v. State Bar of Wisconsin,* 1 F.3d 468, 472–73 (7th Cir.1993) (district court's conditional dismissal order "made clear that additional action to dispose of the case was still necessary"), *cert. denied,* —— U.S. ——, 114 S.Ct. 698, 126 L.Ed.2d 665 (1994); *Schoenberger v. Oselka,* 909 F.2d 1086 (7th Cir.1990) (court had jurisdiction over appeal from a *Harris*-type order); *In re Behrens,* 900 F.2d 97, 100–01 (7th Cir.1990) (applying *Hatch/Harris* distinction to order of the bankruptcy court).

The majority observes, however, that we at times have entertained appeals even where a conditional dismissal order had not mentioned a final judgment, thereby implying that we have been less than faithful to *Hatch.* (*Ante* at 1164 (citing *Kaplan v. Zenner,* 956 F.2d 149, 150 n. 1 (7th Cir.1992); *Adams v. Lever Bros. Co.,* 874 F.2d 393, 394–95 (7th Cir.1989)). Yet in my view, neither *Adams* nor *Kaplan* diverges from *Hatch.* In *Adams,* the district court entered a further order denying reinstatement at the end of the period permitted by its dismissal order.[1] The court's supplemental order plainly indicated that the court intended to finally dispose of all matters in the case, making the order an appealable final decision. The district court's supplemental order in *Adams* therefore removes that case from either branch of the *Hatch/Harris* dichotomy.

*Kaplan* also is of limited value because the opinion fails to disclose the nature of the district court's conditional dismissal order, stating only that the court dismissed the case "with leave to reinstate on or before July 26." 956 F.2d at 150. As a result, we are in the dark as to whether *Kaplan* involved a *Hatch* or *Harris*-type order, meaning that *Kaplan* cannot be read to create a conflict in our cases.

Were we to adhere to *Hatch* and *Harris* today, there is no doubt in my mind that we would refuse jurisdiction over this appeal, as the district court's July 11, 1991 order is clearly of the *Hatch* rather than the *Harris* variety. The district court effectively dismissed Otis' case without prejudice, and its order did not state that the conditional dismissal would be converted into a dismissal with prejudice at the end of the reinstatement period. The court's decision to accept jurisdiction over this appeal therefore represents a clean break from our existing precedents, although it is a break with which I agree. Judge Easterbrook's opinion quite rightly explains that our jurisdiction should not depend on whether the district court invoked the "magic words" of finality in its conditional order when it is otherwise clear that the court intended no further proceedings in the case. (*Ante* at 1165–66.) I therefore concur in the decision to abandon *Hatch* and its progeny, although I do so recognizing that following those decisions would have required a different result today.

**B.**

I also am compelled to comment on the court's discussion of the practice of dismissing cases with leave to reinstate. The majority begins by telling us that the practice is rarely used outside the Northern District of Illinois (*ante* at 1162), but that is simply not the case, as there are any number of decisions from other circuits that address the implications of such orders on appellate jurisdiction. (*See ante* at 1164–65 (discussing case law from other circuits)). As a former district judge who utilized similar orders, I take exception to the implication that the

---

1. I am all too familiar with the facts in *Adams,* as     I was the district judge below.

practice is used most frequently for the sole purpose of improving a court's statistics. I fully agree that it would be improper for a district court to dismiss a case with leave to reinstate simply to reduce the size of its docket, although congressionally-imposed time restrictions may only serve to make that avenue more attractive to district judges. But in my view, careful and deliberative judges in the Northern District of Illinois, such as Judge Hart, put the practice to a number of more worthy uses.

For example, in the case before us today, Judge Hart surely was unconcerned with docket statistics when he provided the plaintiff an opportunity to reinstate her case in six months if her discovery obligations were belatedly fulfilled. As the majority explains, Judge Hart was entitled to dismiss the case outright on July 11, 1991 (or perhaps even before that (*see ante* at 1168)), and in my view, he should not be faulted for displaying compassion for a *pro se* litigant by providing her six additional months to complete her discovery and to reinstate her case. The majority responds that the district court could just as easily have announced on July 11, 1991 that it intended to dismiss Otis' case in six months if she remained unable or unwilling to proceed. (*See ante* at 1163.) But as the majority concedes, that would have required the court to set an additional status hearing for January 12, 1992, and on that date, to revisit the case yet again. The majority's proposal would therefore require district courts, whose scarce resources already are overextended, to expend even more time on cases that are going nowhere, not to mention the additional expense and inconvenience to the parties of further hearings. Furthermore, if the case happened to be over three years old when the district court made the preliminary announcement the majority proposes (which was not the case here), the court would have been required to explain in a published report why the case had not yet been resolved. *See* 28 U.S.C. § 476(a)(3). Because a district court has only limited time to devote to each of its hundreds of cases, and because it generally is perceived (whether correctly or incorrectly) as something of a stigma to have cases included on such a published report, the major-

ity's proposal may make district courts even less willing to offer plaintiffs in Otis' position similar opportunities in the future. Of course, the district court avoids all of these problems by dismissing the case with leave to reinstate. At the same time, after today's decision, the court's conditional order in all likelihood would not create new problems with jurisdiction on appeal.

I also found as a district judge that the practice of dismissing with leave to reinstate is particularly useful in the settlement context. For example, it can serve a legitimate purpose where settlement is imminent, or where the parties have decided to settle but need considerable time to finalize the terms of their agreement. Indeed, parties engaged in serious settlement negotiations often request a dismissal with leave to reinstate in order to maintain constructive pressure on the bargaining process while avoiding the time and expense of ongoing litigation responsibilities. A district judge might also use the device herself to insure that parties who purport to be on the verge of settlement finalize their agreement promptly. Use of the practice in the settlement context is eminently reasonable for a court with literally hundreds of civil and criminal cases on its docket, especially where any number of those cases may be on the verge of settlement at any one time. The alternative—permitting a case to languish on its docket while the court waits to hear from the parties—presents problems of its own, as that is one sure way for cases to fall through the cracks for months at a time. The only way to prevent that is to require periodic status reports, which again put parties on the verge of settlement to an unnecessary inconvenience and expense, particularly when one or both are from outside the district.

In the current judicial climate, where congressionally-imposed time constraints on the civil docket compete with the Speedy Trial Act restrictions of the criminal docket, we should not be so quick to condemn a practice that has proved useful to our district court colleagues simply because it may, in a few isolated instances, create jurisdictional questions on appeal. Given the degree of docket congestion in the Northern District of Illi-

nois, I think it incumbent upon us, as a responsible and responsive reviewing court, to provide our colleagues with all reasonable means of efficiently and intelligently managing their case loads. In this case, Judge Hart chose a path that was both practical and compassionate—he removed the case from his docket while at the same time providing a recalcitrant *pro se* litigant a second chance to play by the rules. I, in all likelihood, would have chosen the same course were I sitting in his place.