In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2691

Securities and Exchange Commission,

Plaintiff-Appellee,

v.

Gary Van Waeyenberghe and First Choice
Management Services, Inc.,

Defendants.

Appeal of Arnstein & Lehr

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:00cv0446RM--Robert L. Miller, Jr., Judge.

Argued January 24, 2002--Decided March 29, 2002

Before Easterbrook, Ripple, and Diane P. Wood, Circuit Judges.

Per Curiam.  Gary Van Waeyenberghe-- convicted of fraud, tax evasion, and other offenses, see United States v. Van Waeyenberghe, No. 87-2048 (7th Cir. Feb. 5, 1988) (unpublished order), and the target in a murder-for-hire scheme by his former confederate, see United States v. Leibowitz, 857 F.2d 373 (7th Cir. 1988)-- wired $150,000 to Arnstein & Lehr as a retainer for representing him and First Choice Management Services in litigation. Arnstein & Lehr did not know it at the time, but the money came from First Choice. Within days the sec filed a suit accusing Van Waeyenberghe and First Choice of new frauds, and it asked the district court to freeze the defendants' assets and recoup any large recent expenditures, which the sec believed should be recovered so that the funds would be available to distribute to bilked investors if the charges of fraud should be sustained. Cf. United States v. Monsanto, 491 U.S. 600 (1989); Caplin & Drysdale, Chartered v. United States, 491 U.S. 617 (1989); SEC v. Quinn, 997 F.2d 287 (7th Cir. 1993). The district court issued the requested order, and Arnstein & Lehr was among those compelled to turn

over funds received from the defendants. If Van Waeyenberghe and First Choice prevail in the suit, then the money will be returned to Arnstein & Lehr, but if they lose then the law firm may end up out of pocket. It has asked us to reverse the turnover order.

The sec contends that the turnover order is not a "final decision" appealable under 28 U.S.C. sec.1291. An antecedent issue also requires thought: Is the appeal timely? According to Arnstein & Lehr, the turnover order was signed and filed on March 23, 2001. If the order was appealable at all, Arnstein & Lehr had 60 days to file its notice of appeal. See Fed. R. App. P. 4(a)(1)(B). Yet the notice was not filed until June 26.

Arnstein & Lehr calculates the time differently. It filed a motion on April 16, 2001, asking the district court toreconsider its decision. This motion was denied on May 29, and the notice of appeal--filed within 30 days--therefore is timely, Arnstein & Lehr contends. Although a timely motion for reconsideration suspends the finality of a judgment, see Fed. R. App. P. 4(a)(4)(A), this motion itself appears to be untimely. A motion to alter or amend the judgment must be filed within 10 days. See Fed. R. Civ. P. 59. As a practical matter this means 14 days, because weekends are excluded. See Fed. R. Civ. P. 6(a). But Arnstein & Lehr filed its motion 24 days after the district court's decision. It is therefore untimely and does not affect the period for appeal.

In a memorandum filed after oral argument, Arnstein & Lehr concedes this but contends that the motion should be treated as one under Fed. R. Civ. P. 60(b). A motion under Rule 60(b) is on the list in Rule 4(a)(4)(A) only when filed within 10 days of the decision, so this motion does not extend the time for appeal. Denial of a Rule 60(b) motion may be independently appealable--although all that such an appeal presents for decision is whether the district court properly applied the Rule 60(b) criteria, not whether the initial order was correct. But even this limited review is unavailable, because the motion did not come within Rule 60(b) in the first place. A Rule 60(b) motion is proper only

after the terminating order of the whole litigation, see Kapco Mfg. Co. v. C&O Enterprises, Inc., 773 F.2d 151 (7th Cir. 1985), and that event lies in the future.

The district court's docket complicates this analysis. Usually an order is signed on one day and entered on the docket that same day, or shortly afterward. If the two dates differ, it is the date of docketing that starts the time for purposes of motions practice and appeals. See Darne v. Wisconsin, 137 F.3d 484, 486 n.1 (7th Cir. 1998). But three dates are associated with this order. Arnstein & Lehr says that the district judge signed the turnover order on March 23, 2001. The docket indicates its entry on March 29. A bracketed notation at the end of the entry then says: "Entry date 04/02/01". If the entry date was March 29, then the motion (and thus the appeal) remains untimely. If the actual entry date was April 2, however, then the motion for reconsideration was timely under Rule 59, and the notice of appeal likewise is timely. One or more of these dates may be a clerical error, making it correspondingly hard to determine timeliness. We therefore turn back to the question whether the order is appealable in the first place, an issue that may make it unnecessary to pursue the timeliness question further.

Arnstein & Lehr contends that the turnover order is final and appealable under sec.1291 as a "collateral order"; it does not contend that this order is appealable as an interlocutory injunction under 28 U.S.C. sec.1292 or that any other statute authorizes an appeal. Contrast Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999). Nor is this an appeal by Van Waeyenberghe or First Choice contending that the order will undermine or preclude defense of the pending litigation, and thus can be analogized to the security bond in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949). Cf. Herbstein v. Bruetman, 241 F.3d 586 (7th Cir. 2001). Instead it is a creditor's appeal, and the only fight is over interim custody of funds.

The collateral-order doctrine allows immediate appeal of decisions that are "conclusive, that resolve important questions separate from the merits, and

that are effectively unreviewable on appeal from the final judgment in the underlying action." Swint v. Chambers County Commission, 514 U.S. 35, 42 (1995). It is hard to see how any of these requirements is satisfied. No turnover order is "conclusive"; the order determines only who holds the stakes while the litigation proceeds. If Van Waeyenberghe and First Choice prevail, then the funds will be handed back to Arnstein & Lehr. This also shows that the decision cannot be called "unrelated to the merits"; it is entangled with the merits. Finally, Arnstein & Lehr will have a remedy by appeal from any order treating the funds as available for distribution to creditors. It may make then all of the arguments it advances now. Arnstein & Lehr disputes this final point, contending that, because it has withdrawn as counsel, it cannot appeal from the final judgment. But its appeal would not be as counsel; it would be as creditor. The reasons we have canvassed show why courts routinely treat as non-final orders to turn assets over to receivers pending further adjudication. See, e.g., FTC v. Overseas Unlimited Agency, Inc., 873 F.2d 1233 (9th Cir. 1989); United States v. Beasley, 558 F.2d 1200 (5th Cir. 1977). We see no good reason why this appeal should be handled differently.

Dismissed for want of jurisdiction