Darlene Theresa **WATSON,**
Plaintiff–Appellant,

v.

Glen C. **MARSH, et al., Defendants–**
Appellees.

Nos. 03–1980, 03–2465.

United States Court of Appeals,
Seventh Circuit.

Submitted April 19, 2004.*

Decided April 19, 2004.

Darlene T. Watson, Shelby, IN, pro se.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Stacy J. Vasilak, Clark & Associates, Munster, IN, for Defendant–Appellee.

Before POSNER, EVANS, and WILLIAMS, Circuit Judges.

### ORDER

After defaulting on her mortgage payments, Darlene Watson was forcibly evicted from her home. She filed a lawsuit against sixteen individuals and companies that were involved in either the eviction itself or the later disposal of the property she left behind. The defendants fell into two categories: public officials and private actors (known respectively as the "public defendants" and the "private defendants"). The district court granted summary judgment for all of the defendants except for a company called R & M Enterprises, whose motion for summary judgment is still pending. The other defendants (the public and the private defendants separately) filed motions under Fed.R.Civ.P. 54(b) for entry of final judgment as to them, which the district court granted. After filing motions (both denied) under Rule 59(e), Watson appealed from each final judgment. We have consolidated the two appeals.

Before proceeding, we address two questions raised by the litigants' jurisdictional statements. First, Watson claims (puzzlingly, given that she is the appellant) that "this Court does not have jurisdiction to hear this appeal." She seems to base this belief on the fact that the case is still pending in the district court with respect to R & M Enterprises. But entry of a Rule 54(b) judgment (as obtained by each the two groups of defendants in this case) allows an appeal to be taken immediately with respect to the subset of claims or defendants for which judgment has been entered. *See Hill v. Potter,* 352 F.3d 1142, 1144 (7th Cir.2003). Second, the public

defendants claim that Watson's Rule 59(e) motion with respect to their Rule 54(b) final judgment was untimely, which would mean that her notice of appeal (filed eleven days after the denial of the Rule 59(e) motion, but almost three months after the entry of Rule 54(b) judgment) was also untimely. But they are wrong: Watson's Rule 59(e) motion was filed on January 31, 2003, fourteen days (and ten business days) after the entry of final judgment on January 17, 2003. *See* Fed.R.Civ.P. 6(a); *S.E.C. v. Van Waeyenberghe,* 284 F.3d 812, 814 (7th Cir.2002) (per curiam). So we have jurisdiction and can proceed to the merits.

Watson defaulted on her mortgage payments in 1998, and the mortgagor, Norwest Mortgage, Inc., successfully foreclosed on her home, but Watson refused to move out and neither removed nor relocated her personal property. The real estate was sold at auction in July 1999, and Norwest was the successful bidder. In February 2000, Norwest obtained a writ of assistance from the Jasper County Superior Court, directing Sheriff Jason Wallace to evict Watson from the property. Before the eviction took place, however, it was discovered that Watson had filed for bankruptcy in December 1999, and the court issued an order staying the eviction. When the bankruptcy proceedings were dismissed in April 2000, Norwest moved the superior court to renew of the writ of assistance, and the court granted the motion on June 16, 2000.

On the morning of June 29, 2000, Sheriff Wallace and his deputies prepared to carry out the eviction. Wallace believed special precautions were needed in light of a letter Watson had sent to the sheriff before the real estate was sold at auction. Under the heading "Buyer Beware 'Notice' to All," she declared her belief that the sale was unlawful because she held a "federal Land

Patent," *see Hilgeford v. Peoples Bank,* 776 F.2d 176, 179 (7th Cir.1985) (per curiam), and indicated her intent "to defend my property including using Deadly Force." The eviction was therefore initiated with some force, which included placing Watson in handcuffs until the building was deemed secured.

Watson was then released and given an opportunity (though it is disputed how long she had) to remove her personal property from the house. Later that day, a moving and storage company (owned by Glen Marsh) was brought in to remove Watson's personal property. The property was taken to a storage facility and Watson was given notice and an opportunity to retrieve it upon payment of the moving and storage costs. Watson refused to pay, however, and the property was eventually sold at auction.

There was still some personal property left behind at the house, consisting mostly of papers and personal effects with little or no resale value. In order to prepare the property for resale, a disposal company, B & B Lawn Care, Inc., was hired to clear out this remaining property, which it did (assisted by R & M Enterprises) by either dumping or burning it.

In September 2000, Watson filed her complaint in the district court. She stated claims for what the district court described as "various constitutional and civil rights violations" under 42 U.S.C. § 1983, along with half a dozen state-law torts (invoking the district court's supplemental jurisdiction) including conversion, breach of bailment, trespass of real property, and negligent and intentional infliction of emotional distress. On cross-motions for summary judgment, the district court analyzed each of Watson's claims in a careful and exhaustive 42–page order, and granted summary judgment for the defendants (except, as noted above, R & M Enterprises) on all counts.

On appeal, Watson challenges the district court's conclusions as to her claims for conversion and breach of bailment. But her argument consists of nothing more than narratives of the relevant events and descriptions of the elements of the tort. This provides us with no basis for disturbing the district court's judgment. *See Anderson v. Hardman,* 241 F.3d 544, 545 (7th Cir.2001) (appellate arguments must contain more than generalized assertion of error). The arguments in her reply brief provide more in the way of substance, but arguments made for the first time in a reply brief are waived. *See Fenster v. Tepfer & Spitz, Ltd.,* 301 F.3d 851, 859 (7th Cir.2002); *Dixon v. Chrans,* 986 F.2d 201, 203 (7th Cir.1993) (waiver rule applies to pro se litigants).

■ Watson presents a more cogent argument challenging the reasonableness of the search and seizure of her house. She first claims that it was unreasonable because her then-pending bankruptcy proceedings invalidated the writ of assistance authorizing her eviction. But even if this is so, Norwest obtained renewal of the writ two months after Watson's bankruptcy proceedings were dismissed, and thus the writ appears to have been valid at the time of its execution. In any event, the federal courts do not have authority to review the validity of state-court orders of eviction, so long as the plaintiff has a reasonable opportunity to raise her challenge in state court. *See Brokaw v. Weaver,* 305 F.3d 660, 667–68 (7th Cir.2002); *Homola v. McNamara,* 59 F.3d 647, 651 (7th Cir. 1995).

■ Watson also argues that the use of force to carry out her eviction was unreasonable. But given that she had threatened to "defend [her] property including using Deadly Force," we, like the district

court, see nothing unreasonable about the measures taken by Sheriff Wallace. *See Morfin v. City of East Chicago,* 349 F.3d 989, 1004–05 (7th Cir.2003) (threat posed to officers or others is relevant to assessing the reasonableness of force under the Fourth Amendment).

The district court's grants of summary judgment are AFFIRMED.