**CASANOVA GUNS, INC., Plaintiff-Appellant,**

v.

**John B. CONNALLY, Secretary of the Treasury, et al., Defendants-Appellees.**

**No. 71–1096.**

United States Court of Appeals, Seventh Circuit.

Jan. 25, 1972.

Rehearing Denied Feb. 14, 1972.

---

Jack J. Gimbel, Milwaukee, Wis., for plaintiff-appellant.

L. Patrick Gray, III, Asst. Atty. Gen., Judith S. Ziss, Atty., Dept. of Justice, Washington, D. C., David J. Cannon, U. S. Atty., Milwaukee, Wis., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before KERNER, PELL and SPRECHER, Circuit Judges.*

PER CURIAM.

This is an appeal by Casanova Guns, Inc. (Casanova Guns), a Wisconsin corporation, from the denial of its application for renewal of its federal firearms license by the Wisconsin Regional Commissioner of the Treasury Department's Alcohol, Tobacco and Firearms Division. The appellant brought an action in the district court under section 102 of the Gun Control Act of 1968, 18 U.S.C. § 923(f) (3), to review the commissioner's decision not to renew the license. The district court upheld the commissioner's decision.

The license was denied because of Casanova Guns' relationship with Casanova's, Inc. (Casanova's), a convicted felon. The Gun Control Act prohibits the issuance of federal firearms licenses to convicted felons and to companies directed or controlled by convicted felons. 18 U.S.C. § 923(d) (1) (B).[1] Based upon their findings that Casanova's controlled or had the power to control Casanova Guns, the commissioner and the district court found the appellant ineligible for a renewal license. We are asked to review the finding that Casanova's controlled Casanova Guns.

An understanding of the commissioner's decision requires an examination of the history of the respective corporations. Casanova's, although incorporated in 1959 by Clarence Casanova, has

---

* Judge Kerner heard oral argument, but did not participate in the adoption of this opinion.

1. Section 923(d) (1) (B) provides in part:
   (d) (1) Any application submitted under subsection (a) or (b) of this section shall be approved if—
   \*　　\*　　\*　　\*　　\*
   (B) the applicant (including, in the case of a corporation, partnership, or association, any individual possessing, directly or indirectly, the power to direct or cause the direction of the management and policies of the corporation, partnership, or association) is not prohibited from transporting, shipping, or receiving firearms or ammunition in interstate or foreign commerce under section 922(g) and (h) of this chapter.

   . . .

   Section 922(g) provides, "It shall be unlawful for any person—. . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport any firearm or ammunition in interstate or foreign commerce."

**1322**

been in the sporting goods and gun business in Milwaukee for 39 years. The president and major stockholder of Casanova's, Clarence Casanova, held approximately 350 of the 500 shares. Other members of the Casanova family held the remainder of the shares and acted as minor officers in the corporation. In 1966 Casanova's was indicted for the possession of unregistered firearms. Two years later the corporation pleaded guilty and was fined the minimum amount imposed by the statute. That conviction rendered Casanova's ineligible under section 923 for renewal of its federal license.

Casanova Guns was organized in March 1967, subsequent to the indictment of Casanova's but prior to the conviction. The president and sole shareholder of Casanova Guns was John Casanova, Clarence Casanova's son and a shareholder of Casanova's. The other family members, who continued to direct Casanova's, became officers and directors of Casanova Guns. In February 1967 Casanova Guns applied for and received a federal firearms license. After the license was obtained, Casanova Guns took over the first company's entire gun business. Casanova's continued in the general sporting goods business.

On April 16, 1969, Casanova Guns purchased the entire inventory of firearms of Casanova's. In exchange for the inventory, Casanova Guns gave an unsecured promissory note for $424,000. John Casanova ran Casanova Guns in the same building and used the same display area as Casanova's. There was an informal arrangement by which Casanova Guns leased floor space and storage facilities from Casanova's. Separate books and accounts were kept for the two corporations, but John, who considered himself the sole employee of Casanova Guns, was paid his $32,710 salary by Casanova's.

In January 1969, Casanova Guns had applied for a renewal of its federal license. That renewal application was refused on May 29, 1969.

■ The commissioner's finding, a finding substantially similar to that of the district court, was in part as follows:

> . . . [I]nvestigation has established that the applicant's employer, Casanova Guns, Inc., is a corporate successor in interest directly related to a corporation, Casanova's Inc., which is a convicted felon. The business operations of Casanova Guns, Inc., are substantially the same as the operations of its related predecessor. Furthermore, the officers of Casanova Guns, Inc., were the persons responsible for the operations of Casanova's, Inc. Therefore, Casanova Guns, Inc., being a related successor to a convicted felon, is prohibited from receiving, possessing or transporting firearms in commerce or affecting commerce under Title VII of the Omnibus Crime Control and Safe Streets Act of 1968.
> . . .

Applying the "clearly erroneous" standard, Fed.R.Civ.P. Rule 52(a), to the record before us, we believe that the commissioner's and district court's findings must be upheld.

■ The appellant urges that Casanova Guns is not a convicted felon and therefore should not be denied a license on the basis of the felon status of Casanova's. That view ignores the express language of the licensing act. The statute explicitly prohibits the issuance of a license to a convicted felon or to a corporation, partnership or association over which a convicted felon exercises or could exercise control. Additionally, it is well settled that the fiction of a corporate entity must be disregarded whenever it has been adopted or used to circumvent the provisions of a statute. Anderson v. Abbott, 321 U.S. 349, 362–363, 64 S.Ct. 531, 88 L.Ed. 793 (1944); Kavanaugh v. Ford Motor Co., 353 F.2d 710, 717 (7th Cir. 1965); Joseph A. Kaplan & Sons, Inc. v. F.T.C., 121 U.S. App.D.C. 1, 347 F.2d 785, 787–788 (1965); Ohio Tank Car Co. v. Keith Ry. Equip. Co., 148 F.2d 4, 6 (7th Cir.),

cert. denied, 326 U.S. 730, 66 S.Ct. 38, 90 L.Ed. 434 (1945).[2]

It is apparent from the record that a substantial purpose for the incorporation of Casanova Guns was the circumvention of the statute restricting issuance of firearms licenses to convicted felons. Casanova Guns was formed after Casanova's was under federal indictment. Indeed, the testimony of John Casanova at the administrative hearing is a reluctant admission that the second corporation was formed to insure the continuation of the gun business.[3]

Further, there is a significant unity of interest between the officers and stockholders of the two corporations and the business operations were closely integrated. The four officers of each corporation were the same, the only difference being that Clarence Casanova was the president of Casanova's and John Casanova was the president of Casanova Guns. Casanova Guns operated from the same building as Casanova's and was dependent on Casanova's for light, heat, telephone, bookkeeping and additional personnel when necessary. Casanova's provided these services on an informal "fee" arrangement, but the nature of that arrangement does not destroy the interlocking relationship between the management personnel and practices of the two companies.

In addition, the total assets of Casanova Guns derived from the inventory purchased from Casanova's. That inventory was purchased on a $424,000 unsecured note which is payable on demand. We believe a debt of this nature and magnitude warrants the inference that Casanova's possessed a substantial degree of control over Casanova Guns. That belief is bolstered by the admission of Clarence Casanova that he exercised some control over Casanova Guns in order to protect his investment. That control was made possible by the fact that the two corporations operated out of the same building; also, Clarence Casanova's daughter was the bookkeeper for both corporations.

Under these circumstances, although we realize the hardship the denial works upon the Casanova enterprises, we find that the commissioner's denial of the application and the district court's affirmance of that decision were not clearly erroneous. The decision below is therefore affirmed.

---

2. The appellant seeks to avoid the application of these decisions by arguing that the commissioner must establish the applicant's intent to circumvent the Gun Control Act before he can deny it a license by "piercing the corporate veil." We do not believe such a showing is necessary. This court addressed itself to that specific question in Kavanaugh v. Ford Motor Co., *supra*, 353 F.2d at 717, where we held:
> Intention is not controlling when the fiction of corporate entity defeats a legislative purpose. "The question is whether the parties did what they intended to do and whether what they did contravened the policy of the law."

3. On two occasions, John Casanova acknowledged that Casanova Guns was formed as a result of the indictment against Casanova's. On the first, responding to a question as to why Casanova Guns was formed, Casanova stated, "Well, at the beginning it was formed because someone told me it was a good idea to have a second license because of the indictment." Later the following colloquy took place:
> Q. Are you now operating Casanova Guns, Inc. only because of the reason that Casanova's Inc. could not obtain a license?
> A. It isn't my only reason for operating. It would be one of them.