56 F.3d 29
 Scott HENNING, Claimant-Appellant,
v.
AMSTED INDUSTRIES, INCORPORATED, Intervenor-Appellee,
Cassandra Corporation, also known as Byturbo International,
also known as Byturbo Products, also known as Johnson
Machine and Press Company, also known as Dynablast, also
known as Johnson Press Company, also known as SBL,
Incorporated, South Bend Lathe, Incorporated, Debtor-Appellee.
 No. 94-3539.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 28, 1995.
Decided May 24, 1995.
 
 Kimberly E. Roy, Wildman, Harrold, Allen & Dixon, Chicago, IL, James W. Perry (argued), Jerry L. Sumpter, Sumpter & Perry, Cheboygan, MI, for Scott Henning.
 Alan S. Rutkoff (argued), McDermott, Will & Emery, Chicago, IL, Thomas M. Walz, William L. Wilsom, Hahn, Walz, Knepp, Dvorak, & Higgins, South Bend, IN, for Amsted Industries, Inc.
 Patrick D. Murphy, John W. VanLaere, Jones, Obenchain, Ford, Pankow & Lewis, South Bend, IN, for Cassandra Corp.
 Before BAUER, EASTERBROOK, and RIPPLE, Circuit Judges.
 BAUER, Circuit Judge.
 
 
 1
 Scott Henning filed a claim against the debtor in this case, a company known as South Bend Lathe ("SBL" or "Lathe"). The bankruptcy court disallowed Henning's claim as time-barred, and the district court affirmed. Although for different reasons, we believe Henning's claim was properly rejected, and therefore, we affirm.
 
 
 2
 In June of 1975, Amsted Industries sold its machine tool manufacturing division to SBL. Contained in the sales agreement was a provision under which Amsted agreed to indemnify and hold harmless SBL against any products liability claims arising from products sold before July 1975 for which Amsted would have been liable but for the sale. On September 12, 1983, while operating a press at his place of employment in Warren, Michigan, Scott Henning's right hand was caught and amputated in the machine. The press in question was allegedly manufactured in 1951 by Amsted's predecessor, Johnson Machine and Press Corporation. Henning filed a tort action in Michigan state court against SBL alleging that the press was negligently and defectively designed and was shipped without adequate warning.
 
 
 3
 Henning's claim against SBL was not the only one. Several other plaintiffs filed products liability actions against SBL. The apportionment of liability in these suits became a source of contention between SBL and Amsted. Ultimately, SBL filed an action against Amsted in federal court, seeking a declaration of its duties under its indemnity agreement with Amsted.
 
 
 4
 Before its dispute with Amsted was resolved, SBL reached a settlement with Henning, in which Henning agreed to dismiss his tort suit. Two provisions of the settlement agreement are particularly pertinent. The first provision ("Paragraph 2") states:
 
 
 5
 Lathe and Henning agree Henning's claim shall be settled for the sum of four hundred thousand dollars but Henning shall not seek nor have any right or remedy to collect such sum from Lathe except in the event Lathe, in other litigation now pending between Lathe and Amsted, shall be held entitled to recover, or Amsted shall agree to pay, such sum for settlement of Henning's claim and Henning shall be able to collect such sum only to the extent Lathe shall receive monies from Amsted pursuant to such judicially determined entitlement or Amsted's voluntary agreement to pay such sum toward Henning's claim settlement.
 
 
 6
 The intent of this language is clear and undisputed. It obligates SBL to pay Henning only if Amsted is deemed liable for Henning's injuries or if Amsted instead chooses to settle Henning's claim voluntarily. Any payment made by SBL to Henning under this provision would in effect be made with Amsted's money. Perhaps more important is what is not stated in this provision; Paragraph 2 does not establish liability on the part of SBL or Amsted.
 
 
 7
 The second relevant provision ("Paragraph 3") of the settlement agreement governs what should happen if Amsted is held not liable for Henning's injuries. It states:
 
 
 8
 In the event Henning's Fourth Amended Complaint against Lathe in the aforedescribed Michigan litigation shall be dismissed voluntarily by Henning, or by the court by reason of this agreement, and Amsted shall be held to have no obligation to Lathe with respect to Henning's claim, Lathe agrees it will not assert a statute of limitations defense against any reassertion by Henning of the claims set forth in said Fourth Amended Complaint so long as such claims are filed in court within sixty days after Henning or his attorney has received notice that it has been judicially determined that Amsted has no obligation to Lathe with respect to Henning's claims under the Amsted-Lathe 1975 agreement.
 
 
 9
 In essence, Paragraph 3 extinguishes the settlement if Amsted is held not liable and entitles Henning to refile his state law claim within sixty days without fear of it being deemed time-barred. Pursuant to this agreement, the state court dismissed Henning's claim on January 30, 1989.
 
 
 10
 On March 30, 1990, the District Court for the Northern District Court of Indiana ruled on Amsted's duty to indemnify SBL with respect to thirteen of the products liability claims. Henning's was not among those resolved. Determining that further factual development was necessary for those claims still pending, the court retained jurisdiction over the unresolved claims. We affirmed that decision but remanded for a determination of prejudgment interest on the resolved claims. South Bend Lathe, Inc. v. Amsted Industries, Inc., 925 F.2d 1043, 1045 (7th Cir.1991).
 
 
 11
 In June of 1992, SBL and Henning (as intervenor) requested that the district court rule as to whether their settlement agreement triggered Amsted's indemnity obligation. The district court held that SBL's petition for indemnity was premature. "[D]eclaratory relief as to indemnity is unavailable if liability in the underlying action has not been established." South Bend Lathe, Inc. v. Henning Industries, Inc., No. S85-625, order at 7 (N.D.Ind. June 2, 1992). Until there was a determination that SBL had suffered any loss or incurred any liability, SBL could not enforce the indemnity against Amsted. The court rejected the assertion that the settlement agreement itself reflected such a determination. The court held that that document merely represented agreement between SBL and Henning that if Amsted were held liable, SBL would not have to pay. It did not create liability. Neither SBL nor Henning appealed this decision.
 
 
 12
 In the meantime, relevant proceedings were also taking place in bankruptcy court. In March of 1992, SBL filed for bankruptcy under Chapter 11 of the Bankruptcy Code. On April 27, 1992, Henning filed a proof of claim in the amount of $400,000 with the bankruptcy court. The claim was based on the settlement agreement and not on a separate tort action. Indeed, there was no separate tort action pending anywhere.
 
 
 13
 The bankruptcy court held that Henning's claim was time-barred because it was filed long after the three-year Michigan statute of limitations for products liability claims had expired. As for the effect of the statute of limitations defense waiver in Paragraph 3 of SBL's settlement agreement, the court concluded that it did not apply for two reasons. First, one of the conditions of the waiver was that Amsted be judged to have no liability. This condition was not met because the district court in its June 1992 order ruled only that the petition for indemnity was premature. Alternatively, even if the district court's order were construed to be a finding of no liability, Henning's failure to refile his claim in state court within sixty days permitted SBL to raise the statute of limitations defense. In either case, the time bar applied. The district court affirmed these conclusions, and Henning now appeals.
 
 
 14
 We review de novo the bankruptcy court's conclusions of law and the district court's affirmance of those conclusions. In re Thirtyacre, 36 F.3d 697, 700 (7th Cir.1994). We defer to the bankruptcy court's factual findings unless clearly erroneous. Id.
 
 
 15
 Not surprisingly, the bulk of the parties' argument focuses on the effect of Paragraph 3 on this litigation; Amsted and SBL argue that the statute of limitations was properly raised, and Henning disagrees. We believe, however, that resolution of this case rests on more fundamental grounds.
 
 
 16
 The preoccupation with the statute of limitations assumes that some kind of tort claim exists; after all, in order for a time bar to exist, there must be something to bar. But no such claim is pending anywhere. According to the stipulated facts, the claim before the bankruptcy court was based solely on the settlement agreement and is therefore a contractual claim.
 
 
 17
 This presents Henning with a problem of a different variety. It means that the claim with which the bankruptcy court was presented and which is before us now is indistinguishable from the claim disposed of by the district court in June of 1992: that the settlement agreement itself represented a finding of liability. The court's observations in 1992 are no different the second time around. Henning may believe that he is entitled to $400,000, but the settlement agreement does not obligate anyone to pay him. Without a separate finding as to SBL's liability, the settlement agreement is ineffectual.
 
 
 18
 Faced with an issue already litigated, the inescapable conclusion is that collateral estoppel bars Henning from relitigating his claim here. Freeman United Coal Mining Co. v. Office of Workers' Comp. Program, 20 F.3d 289, 293-94 (7th Cir.1994). Henning has simply asked the bankruptcy court to decide what the district court decided earlier. Because the June 1992 judgment of the district court conclusively established that Henning had no claim under the settlement agreement, we need not delve into the proper construction of the statute of limitations waiver contained in Paragraph 3. Although we choose to rely on different grounds in reaching our decision, we nevertheless arrive at the same result as that of the courts below. Henning's claim should have been disallowed. For the foregoing reasons, the decisions of the bankruptcy court and the district court are
 
 
 19
 AFFIRMED.