CITIZENS ELECTRIC CORPORATION, as representative of a class, Plaintiff–Appellant,

v.

BITUMINOUS FIRE & MARINE INSURANCE COMPANY, et al., Defendants–Appellees.

No. 95–1707.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 20, 1995.

Decided Oct. 20, 1995.

---

Thomas B. Weaver (argued), Douglas R. Sprong, Armstrong, Teasdale, Schlafly, Davis & Dicus, St. Louis, MO, George M. Von Stamwitz, John F. Cowling, St. Louis, MO, for Citizens Electric Company.

John L. McMullin, A.J. Bronsky (argued), Steven D. Asher, Brown & James, St. Louis, MO, Kristine A. McGee, Brown & James, Belleville, IL, for Bituminous Fire & Marine Ins. Company and Bituminous Casualty Corporation.

Michelle M. Nakfoor, Judith F. Helms, Robert R. Anderson, III (argued), Michael W. Morrison, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for Lumbermens Mutual Casualty Company.

Jon E. Elenius, Thomas Murphy (argued), Caron & Fitzgerald, Chicago, IL, for Firemans Fund Insurance Company.

Before CUDAHY, FLAUM, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

The premises of Missouri Electric Works in Cape Girardeau, Missouri, are contaminated with polychlorinated biphenyls (PCBs). Some of the PCBs came from transformers that Giles Armature and Electric Works sent to Missouri Electric Works for disassembly. Under § 107 of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9607, Giles Armature is liable for some of the cleanup costs. Problem: Giles Armature no longer exists. An Illinois corporation, Giles Armature went out of business and was dissolved on April 1, 1986. State law permits suit to be commenced within five years of the dissolution, 805 ILCS 5/12.80, and on March 28, 1991, with three days to go, a class of firms conducting the PCB-removal operation at Cape Girardeau filed this suit seeking to compel Giles Armature and its seven former shareholders to chip in. A suit commenced within the five years survives even if resolved thereafter, as this was, on July 27, 1993, by the entry of a consent judgment. The eight defendants promised to pay $442,086.48 plus 27% of all cleanup costs at the Cape Girardeau site incurred after April 16, 1993. In a side agreement, the plaintiff class promised to collect exclusively from Giles Armature's insurers.

 The insurers were not amused and have refused to pay. In September 1993 the class began garnishment proceedings. Lumbermens Mutual Casualty Company denied that it had ever issued a policy to Giles Armature; the other garnishees joined Lumbermens additional argument that September 1993 was too late to get a collection suit under way. Under Illinois law the five-year period after dissolution marks the outer limit for suits *by* dissolved firms as well as suits against them. *Koepke v. First National Bank of DeKalb*, 5 Ill.App.3d 799, 284 N.E.2d 671 (2d Dist.1972). Although the garnishment proceedings were commenced by the class rather than by Giles Armature, Illinois treats a judgment creditor as subject to any disabilities of the judgment debtor and allows the garnishee to assert all defenses that it could have invoked had the judgment debtor filed suit. *Zimek v. Illinois National Casualty Co.*, 370 Ill. 572, 576–77, 19 N.E.2d 620, 622–23 (1939); *Wolff v. Halloway*, 116 Ill. App.2d 270, 272–73, 253 N.E.2d 596, 597 (1st Dist.1969); *Reisman v. Delgado*, 117 Ill. App.3d 331, 333–34, 73 Ill.Dec. 77, 79, 453 N.E.2d 902, 904 (1st Dist.1983). Because Giles Armature could not have filed suit in 1993, the insurers argued, neither could the plaintiff class. As for the seven investors: the insurers argued that they had been held derivatively liable for the corporation's obligations, a situation the policies do not cover. The district court agreed with the insurers on both points and dismissed the garnishment proceedings. 877 F.Supp. 454 (S.D.Ill. 1995).

On the way to dismissing the action, the district judge held that Illinois law supplies the rule of decision, something the class vigorously contests. Acknowledging that under Fed.R.Civ.P. 17(b) "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized", the class insists that CERCLA supersedes this rule and requires application of federal law. This cannot be so just because CERCLA is a federal law. We know from *Melrose Distillers, Inc. v. United States,* 359 U.S. 271, 79 S.Ct. 763, 3 L.Ed.2d 800 (1959), that state law determines whether a dissolved corporation can be a defendant in a criminal antitrust prosecution; *Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.,* 629 F.2d 1183 (7th Cir.1980), holds the same about a civil antitrust case.

■ So is there something specific to CERCLA that overrides Rule 17(b)? The class points to 42 U.S.C. § 9607(a), which says that CERCLA applies "notwithstanding any other provision or rule of law". The context of this phrase shows, we held in *Munster v. Sherwin–Williams Co.,* 27 F.3d 1268 (7th Cir.1994), that the notwithstanding clause refers only to substantive liability. It does not displace the many ancillary rules that influence how litigation proceeds— § 9607(a)(2) does not, for example, junk the rules of preclusion and allow a plaintiff to sue without regard to prior defeats, cf. *Supporters to Oppose Pollution, Inc. v. Heritage Group,* 973 F.2d 1320 (7th Cir.1992); it does not permit frivolous litigation, which Fed. R.Civ.P. 11 condemns; it does not permit a plaintiff to ignore a motion for summary judgment properly presented under Fed. R.Civ.P. 56; and it does not permit collection from a firm whose debts have been discharged in bankruptcy, see *In re CMC Heartland Partners,* 966 F.2d 1143 (7th Cir. 1992); *In re Chicago, Milwaukee, St. Paul & Pacific R.R.,* 3 F.3d 200 (7th Cir.1993). It follows that § 9607(a)(2) does not authorize litigation against a defunct corporation, any more than it permits litigation against a deceased person after the estate has been closed.

■ Let us suppose that things are otherwise, that Rule 17(b) does not apply in actions under CERCLA. What federal law would apply? The common law rule is that all litigation by or against a dissolved corporation must be dismissed. *Chicago Title & Trust Co. v. Forty–One Thirty–Six Wilcox Bldg. Corp.,* 302 U.S. 120, 125, 58 S.Ct. 125, 127, 82 L.Ed. 147 (1937); William Meade Fletcher, 8 *Cyclopedia of the Law of Private Corporations* §§ 5605, 5610 (1919). *Chicago Title & Trust* held that the absence of a statute extending corporate existence meant that a dissolved firm could not file suit under federal law. Nothing in CERCLA provides for suit after dissolution, so if federal law applies then the plaintiff class cannot pursue the insurers. Its victory on this issue would be Pyrrhic, unless federal law were deemed to track state law, as in cases such as *O'Melveny & Myers v. FDIC,* —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), and *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). This would be particularly appropriate in a case that involves corporate organization, a subject usually addressed under the internal affairs doctrine, a choice-of-law principle calling for resort to the law of the firm's place of incorporation. *CTS Corp. v. Dynamics Corp. of America,* 481 U.S. 69, 89–93, 107 S.Ct. 1637, 1649–51, 95 L.Ed.2d 67 (1987); *First National City Bank v. Banco Para el Comercio Exterior de Cuba,* 462 U.S. 611, 621, 103 S.Ct. 2591, 2597, 77 L.Ed.2d 46 (1983); *RTC v. Chapman,* 29 F.3d 1120 (7th Cir. 1994). Cf. *Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, 105–06, 111 S.Ct. 1711, 1720–21, 114 L.Ed.2d 152 (1991). Thus if CERCLA supersedes Rule 17(b), there are only two possibilities: the plaintiff class loses outright, or back we go to Illinois law. We prefer the direct route, via Rule 17(b).

■ As we have said, Illinois requires a corporation to get litigation under way within five years of its dissolution and treats a judgment creditor the same way it treats judgment debtors. The garnishment action did not begin until more than seven years after Giles Armature was dissolved, and that, the insurers insist, is that. This has the unsettling consequence that although Illinois permits a suit against a dissolved corporation to continue past the five-year mark, at that

point the firm's principal assets—its insurance policies—turn from carriages into pumpkins. After all, firms usually sell their operating assets and distribute the proceeds on dissolution; policies of insurance are likely to be the principal assets retained in corporate solution, in order to satisfy any belated claims. If these policies cannot be reached after the five-year mark, the effect is rather to nullify the privilege of continuing the suit, and to require the case to be wound up within five years rather than just commenced within that time. States are of course free to enact self-defeating rules, and perhaps Illinois selected five years (rather than, say, two) precisely because it marks the effective outer bound for collection. But we need not consider why the rules take the form they do; the form itself is dispositive.

■ Under the state's rules the question is whether the garnishment action was commenced within five years of Giles Armature's dissolution. True it is that September 1993 is too late—but is that when the action began? It is not by accident that the district court's docket number is *91*–CV–4062–JLF (emphasis added). This is the number assigned to the original suit against Giles Armature; the court treated the garnishment as a motion in an ongoing case. In federal practice, garnishment to collect a judgment is not—at least, need not be—an independent suit. It is part of the main action, prosecuted under Fed.R.Civ.P. 69 by virtue of the supplemental jurisdiction. See *Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir. 1995). Accord, *Skevofilax v. Quigley*, 810 F.2d 378, 385 (3d Cir.1987) (en banc); *Sandlin v. Corporate Interiors Inc.*, 972 F.2d 1212, 1216 (10th Cir.1992). Although there are contrary decisions, see *Berry v. McLemore*, 795 F.2d 452, 455–56 (5th Cir.1986), the law in this circuit is settled—at least for the time being. The Supreme Court has issued a writ of certiorari to address the related question whether the supplemental jurisdiction supports an action against a corporate officer who diverts funds to avoid paying a judgment. *Thomas v. Peacock*, 39 F.3d 493 (4th Cir.1994), cert. granted, —— U.S. ——, 115 S.Ct. 1997, 131 L.Ed.2d 999 (1995). Unless the Court reverses in *Thomas* on grounds equally applicable to garnish-

ment, this proceeding has been handled properly as part of the CERCLA action rather than as an independent suit.

■ Which means that its commencement date is three days short of five years from dissolution, making the claim timely. "Commencement" is a term defined under *federal* law, see Fed.R.Civ.P. 3, because the original action invoked federal jurisdiction under CERCLA rather than the diversity jurisdiction. Compare *West v. Conrail*, 481 U.S. 35, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987), with *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). Additions to the complaint relate back to the original filing, provided that the new parties had notice within the statute of limitations plus the 120 days for service. See Fed. R.Civ.P. 15(c). Bituminous Fire & Marine Insurance Company received notice within that period, so the claim is timely against it even if the period under 805 ILCS 5/12.80 is best characterized as a statute of limitations. That is not, however, the way the state courts treat it; Illinois thinks of this rule as one of survivorship, applied independently of the statute of limitations. See *Blankenship v. Demmler Manufacturing Co.*, 89 Ill. App.3d 569, 44 Ill.Dec. 787, 411 N.E.2d 1153 (1st Dist.1980). The statute itself is captioned "Survival of remedy after dissolution." So the time the insurers received notice of the claim is irrelevant; the only question is whether the "action or other proceeding ... is commenced within five years after the date of such dissolution." 805 ILCS 5/12.80. There is only one "commencement" for a federal case: the date the complaint is filed. That occurred within five years of the dissolution, so the insurers must respond to the garnishment request on the merits. We add, for any glancing light this sheds on the subject, that these insurers land in exactly the position they would occupy had Giles Armature been liquidated or reorganized in bankruptcy. A corporate bankruptcy ends the obligation of the debtor, but tort victims and others with deferred or conditional claims still may collect from the firm's insurers—for insurance is a corporate asset unaffected by the bankruptcy. See *In re Hendrix*, 986

F.2d 195 (7th Cir.1993); *In re Shondel,* 950 F.2d 1301 (7th Cir.1991).

Our disposition of the corporate-liability issues largely moots the parties' dispute about the individual-liability issues. The consent judgment provides for joint and several liability; if the plaintiff class can collect through Giles Armature, it receives everything to which it is entitled. But the individual-liability issues might regain significance if the Supreme Court should reverse in *Thomas,* so we tackle them now to speed this case to a conclusion without the need for additional appeals.

The judgment specified that all eight defendants—Giles Armature and its seven shareholders—are jointly and severally liable. The district court held this insufficient because the judgment does not specify the theory of liability. There are at least three possibilities. First, the former shareholders may have been liable as distributees of the corporation's assets on dissolution. Illinois makes investors in a dissolved firm liable for its debts up to the amount of the liquidating distributions they received. (Any greater award would violate the principle of limited liability for corporate investments.) Second, the former shareholders may have been derivatively liable for the corporation's wrongs. Third, the former shareholders may have been directly liable. The complaint recites that two of the seven, Harold L. Chase and John E. Giles, "were the only officers and directors of Giles Armature at the time of its dissolution." The other five may or may not have been employees of the closely-held firm (the record is silent on the question), and as employees they may have committed one or more of the acts that led to CERCLA liability. Because neither the judgment nor the complaint excludes the first two possibilities, which the insurance policies do not cover, the district judge believed that the insurers are excused. The district court added that there is also no evidence in the record supporting personal liability.

■■■ Our principal difficulty with the district court's approach is that it goes behind the language of the judgment. Like any proper judgment, the decree entered in this case omits reasons and legal conclusions. See Fed.R.Civ.P. 58; *Otis v. Chicago,* 29

F.3d 1159, 1163 (7th Cir.1994) (en banc). It says who is liable for how much, then stops. The meaning of a judgment depends on what it says rather than on what is in the complaint or what the parties (or judge) intended. *Adams v. Lever Brothers Co.,* 874 F.2d 393 (7th Cir.1989). The parties devote considerable attention to the rules Illinois uses for interpreting judgments, but the meaning and effect of a judgment entered by a federal court does not depend on state law. Cf. *Mayer v. Gary Partners & Co.,* 29 F.3d 330 (7th Cir.1994). In federal practice it is wholly proper for the parties to compromise disputes to which the complaint does not advert, and which record evidence does not address, sparing them the burden of amending the pleadings and building a record. That's why people settle rather than litigate. Lest there be any doubt, the Supreme Court adopted a four-corners rule for consent judgments. *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 233–38, 95 S.Ct. 926, 932–35, 43 L.Ed.2d 148 (1975). Like contracts with strong integration clauses, consent judgments satisfy the principle that what you see is what you get.

■■■ There is also a subsidiary difficulty: treating all seven individual defendants as derivatively liable is implausible. Corporations are liable for the acts of their officers and directors, not the other way 'round. An officer or other employee is liable under CERCLA for the consequences of his own decisions, and under both CERCLA and common law principles of *respondeat superior* the corporation shares this liability. *United States v. Carolina Transformer Co.,* 978 F.2d 832, 836–37 (4th Cir.1992); *United States v. Northeastern Pharmaceutical & Chemical Co.,* 810 F.2d 726, 744 (8th Cir. 1986); *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1052–53 (2d Cir.1985). But Congress did not abolish the principle of limited liability for corporate investments. Nothing in CERCLA makes corporate officers, let alone shareholders, vicariously liable for decisions that they did not make or approve, just because third parties' acts have produced corporate liability. See *Sidney S. Arst Co. v. Pipefitters Welfare Fund,* 25 F.3d 417, 420 (7th Cir.1994). The real question therefore is whether the seven individual defendants

are liable for their own acts or liable only as distributees, a subject the decree addresses indirectly by holding them jointly and severally liable with Giles Armature. Liability as investors would have been capped at the sums they received on dissolution. Damages measured by the firm's own liability therefore must be direct, at least for the two director-officer defendants. Pinning down details for the other five must have seemed an academic exercise, given plaintiffs' undertaking to pursue only the insurers. One directly-liable, insured person is all the plaintiff class needs.

Although the judgment means what it says, it is an independent subject whether it obliges the insurers to pay anything. Lumbermens Mutual denies that it ever issued a policy to Giles Armature. The others contend that their policies do not cover the kind of pollution damage that occurred at Cape Girardeau. All three doubtless believe that belated receipt of notice violates the conditions of any policies that were in force. The EPA notified Giles Armature in July 1987 that it was a potentially responsible party, but not until 1991 did the first two insurers receive notice—and from the plaintiff class, rather than from Giles Armature or its officers. Lumbermens Mutual did not learn of the claims until 1993.

■ Then there is the question whether the decree establishes the *insurers'* liability, as opposed to the original defendants' liability. This question has two subsidiary themes. First, because Illinois is not a direct-action state, the insurers' only obligation is to indemnify their clients. The plaintiff class struck a bargain under which Giles Armature and its investors do not face personal liability. Is there any debt to indemnify? We held in *Henning v. Amsted Industries, Inc.*, 56 F.3d 29 (7th Cir.1995), that a similar bargain struck in a bankruptcy case did not create any debt to indemnify. Second, it is far from clear that the consent judgment binds the insurers, who were not parties to it. Consent judgments bind only the parties who gave their consent, see *Martin v. Wilks*, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), for their force rests ultimately on contract rather than a determination that the law requires what the judgment provides.

See *People Who Care v. Rockford Board of Education*, 961 F.2d 1335 (7th Cir.1992). Illinois says that an insurer that refuses to defend its clients—as Bituminous Fire and Fireman's Fund did—is bound by a good faith settlement of the litigation, if in the end the policy is deemed to cover the casualty. The premise of this rule is that the insured bears the liability if the insurer wins the coverage dispute, and therefore the insured has every incentive to drive a hard bargain. Once the plaintiff class agreed to collect exclusively from the insurers, however, the eight original defendants had no reason to bargain tenaciously; they were not spending their own money. Just as insurers cannot throw their clients to the wolves without hazard to themselves, so clients cannot sell out their carriers—a principle to which clients agree in every contract of insurance. See *Charter Oak Fire Insurance Co. v. Color Converting Industries Co.*, 45 F.3d 1170 (7th Cir.1995). Although *Wolf v. Maryland Casualty Co.*, 617 F.Supp. 456, 460 (S.D.Ill. 1985), holds that an insurer must pay a settlement that absolves the insured of any potential liability, whether this is a correct statement of Illinois law is contestable. None of these potential defenses is before us. We mention them only to show that they remain open on remand.

REVERSED AND REMANDED.