**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**VITEK SUPPLY CORPORATION, Nutritional Products & Services, Inc., and Animix, Inc., Defendants–Appellants.**

**No. 97–4209.**

United States Court of Appeals,
Seventh Circuit.

Argued June 1, 1998.

Decided July 10, 1998.

Rehearing and Suggestion of Rehearing en banc Denied Aug. 21, 1998.*

* Judge Cudahy voted to grant rehearing.

Eric J. Klumb (argued), Thomas P. Schneider, Office of U.S. Atty., Milwaukee, WI, for Plaintiff–Appellee.

James M. Shellow, William H. Theis (argued), Shellow, Shellow & Glynn, Milwaukee, WI, for Defendants–Appellants.

Before CUDAHY, EASTERBROOK, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

A jury convicted Vitek Supply Corp. and its president, Jannes Doppenberg, of smuggling into the United States animal food containing drugs that had not been submitted to the Food and Drug Administration for approval. Recently we affirmed the convictions and sentences. *United States v. Vitek Supply Corp.*, 144 F.3d 476 (7th Cir.1998). Vitek was fined $350,000 and ordered to pay restitution of approximately $735,000 (most of this representing the value of meat that was destroyed as adulterated when Vitek's customers learned the truth about its products). The judge allowed Vitek to pay the fine at a rate of $6,000 per month and ordered it to pay $130,000 of the restitution within 30 days. Although the judgment was entered in January 1997, Vitek has paid nary a penny. It claims to be defunct and without assets—though after its sentencing it distributed approximately $250,000 to Doppenberg, its corporate affiliates, and its attorneys, draining a treasury that had been depleted during the months before sentencing. Some $115,000 of this $250,000 was both received and disbursed after sentencing. The district court held a hearing on the question whether Vitek had performed its obligations and, if not, whether its four-year term of probation should be revoked. At the end of this hearing the court entered an order that is brief enough to reproduce in full:

> Based upon the testimony and other evidence received at the hearing held on October 7 and October 24, 1997, to determine whether Defendant Vitek Supply Corporation had violated the terms of its supervised release [sic: should be probation], the court finds that Vitek did violate the terms of its supervised release by willfully failing to pay either its fine or restitution. Vitek's failure to pay was intentional and without justification. The court finds that Vitek willfully divested itself of assets and passed its cash and other assets to related corporations including Nutritional Products & Services, Inc., Animix, Inc., Pricor, and Wilgenweg Beheer, B.V., which the court finds by clear and convincing evidence to be alter egos of Vitek because the companies share common ownership, con-

trol, and assets. They operate out of the same facility and market the same or similar products with many of the same employees. Vitek carried out this course of action for the purpose of rendering itself unable to pay its fine or restitution and to deprive its victims of compensation. The Seventh Circuit has stated that "it is well settled that the fiction of a corporate entity must be disregarded whenever it has been adopted or used to circumvent the provisions of a statute." See Casanova Guns, Inc. v. Connally, 454 F.2d 1320, 1322 (7th Cir.1972).

Accordingly, the court ORDERS that, within ninety (90) days of the date of this order, Vitek and its alter egos shall pay the fine and restitution as ordered at sentencing or shall appear and show cause, if any they have, why they should not be held responsible for the continuing violation of Vitek's terms of supervised release. See 18 U.S.C. § 3613A(a)(1).

This order was entered on December 12, 1997. Ten days later Vitek, Nutritional Products, and Animix filed a joint notice of appeal.

■ Appellate jurisdiction is questionable. The court's order requires Vitek and its corporate affiliates to "pay the fine and restitution as ordered at sentencing or . . . appear and show cause, if any they have, why they should not be held responsible" (emphasis added). A prospect of additional proceedings in the district court means that the decision is not final. Moreover, a principal argument advanced on appeal by Nutritional Products and Animix is that they lacked adequate notice of the proceedings and therefore did not have a chance to defend their interests, yet the purpose of a show-cause order is to give notice and offer a hearing. Although this show-cause order is an odd duck—for it purports to "find" (by clear and convincing evidence, no less) that Vitek and its corporate affiliates *are* alter egos—the fact remains that a hearing was offered to Nutritional Products and Animix. They apparently want two bites at the apple, first on this appeal and then, if we should affirm, in the district court. But the possibility of further proceedings just shows that the order is not final, and hence not appealable.

■ Or does it? This is not the first time we have encountered an appeal from an order of the form "X happens unless within Y days you do Z." In *Otis v. Chicago*, 29 F.3d 1159 (7th Cir.1994) (en banc), the judge entered an order stating that he would dismiss the case with prejudice unless within six months the plaintiff answered the defendant's interrogatories. Six months passed, the interrogatories were not answered, the district judge took no action, and the plaintiff appealed. We held that the expiration of the litigant's time to act caused the decision to become final even if the court neglected to enter a proper judgment. What happens, however, if the litigant appeals before the time has expired? That question came up in *Albiero v. Kankakee*, 122 F.3d 417 (7th Cir. 1997), which held that the notice of appeal is subject to Fed.R.App.P. 4(a)(2): "A notice of appeal filed after the court announces a decision or order but before the entry of the judgment or order is treated as filed on the date of and after the entry." According to *Otis*, the end of the time for action acts as the "entry" of judgment even if the court does nothing; *Albiero* adds that the notice of appeal remains in limbo until then and springs into effect when the time ends, just as if it had been filed the day after the time ran. A notice of appeal does not waive the litigant's opportunity to avoid an adverse judgment by acting within the allotted time, or make conclusive a decision that as rendered is tentative. See *United States v. Milwaukee*, 144 F.3d 524 (7th Cir.1998). But if the decision resolves the litigation subject only to a time-limited option, then the expiration of the time coupled with a notice of appeal permits appellate review. Although *Albiero* was based on a rule that applies only to civil cases, functionally identical language appears in Rule 4(b): "A notice of appeal filed after the announcement of a decision, sentence, or order—but before entry of the judgment or order—is treated as filed on the date of and after the entry." Thus once the 90 days were over and the opportunity to show cause was gone, the notice of appeal took effect and brought the case here.

■ The district court muddied the waters a little by granting a stay, but without saying just what was being stayed. The order reads: "The government has withdrawn its opposition to Defendant Vitek's request for a stay of the court's order of December 12, 1997, requiring it to pay its fine and restitution within ninety days. Therefore, the court ORDERS that 'Defendant Vitek Supply Corporation's Motion for Stay Pending Appeal' (filed March 12, 1998) is GRANTED." This order grants a motion but does not specify the terms of the stay. Did the court mean to postpone the date allowed to show cause, or only to postpone the obligation to pay up? If the former, then perhaps the time has not expired and the order is therefore not final; if the latter, appealability is unaffected. We think that the latter reading is the right one, and for two reasons. First, although there were two stay motions—one by Vitek, and a second by Nutritional Products and Animix—the order grants only one, Vitek's. And Vitek had been ordered to pay; only Nutritional Products and Animix had been invited to show cause. Second, the stay was entered on April 16, more than a month after the 90 days had expired. By the time the judge acted, the judgment had become final and beyond the district court's power to recall. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). See also, e.g., *Berman v. United States*, 302 U.S. 211, 214, 58 S.Ct. 164, 82 L.Ed. 204 (1937).

■ The expiration of the 90 days does more than just create appellate jurisdiction. By allowing the time to pass the appellants abandoned their opportunity to have an evidentiary hearing in the district court. The district judge gave them 90 days to show cause, not 90 days plus whatever time was consumed by an appeal—if only because the decision would not be final, and an appeal therefore would be impossible, while the option of a hearing remained. If appellants wanted a hearing, they had to act during the 90 days. They chose to appeal instead, which was their right, but they must bear the consequences. And the principal consequence for our purposes is that their claim that the district court deprived them of notice and an opportunity to present evidence is so much hot air.

■ We start with Vitek's arguments on its own behalf. The firm was ordered to pay about $1 million, with $136,000 due the first month. It has paid nothing, despite spending $250,000 on other things since sentence was entered. Vitek has many debts and tells us that these are more pressing than the judgment in the criminal case, but judicial orders prevail over the defendant's druthers about who should be paid first. (Vitek does not say that any of its other debts had *legal* priority over the fine and restitution.) During the months before sentencing Vitek went out of its way to make itself judgment-proof and insists that it is too late for the district judge to do anything in response, but *United States v. Yancey*, 827 F.2d 83 (7th Cir.1987), holds that a court may revoke probation on the basis of pre-sentencing events—and anyway there is that pesky $115,000 to explain away.

> Upon a finding that the defendant is in default on a payment of a fine or restitution, the court may, pursuant to section 3565, revoke probation or a term of supervised release, modify the terms or conditions of probation or a term of supervised release, resentence a defendant pursuant to section 3614, hold the defendant in contempt of court, enter a restraining order or injunction, order the sale of property of the defendant, accept a performance bond, enter or adjust the payment schedule, or take any other action necessary to obtain compliance with the order of a fine or restitution.

18 U.S.C. § 3613A(a)(1). Given this grant of authority to deal with defendants that thumb their noses at criminal fines, the district court acted with restraint, and well within its discretion, by ordering Vitek to satisfy its financial obligations forthwith.

■ As for Nutritional Products and Animix: their failure to use the opportunity

extended by the show-cause order means that we must accept the district court's conclusion that they are Vitek's alter egos. (Like the Supreme Court in *United States v. Bestfoods,* —— U.S. ——, —— n. 9, 118 S.Ct. 1876, 1886 n. 9, 141 L.Ed.2d 43, 57 n. 9 (1998), we need not discuss whether state or federal law controls the identification of alter egos or other exercises in corporate veil piercing, for the parties have not argued this issue.) Because the three firms are alter egos, the last phrase in § 3613A(a)(1), which authorizes the district court to "take any other action necessary to obtain compliance with the order of a fine or restitution", supplies all the power necessary to require Nutritional Products and Animix to pay the fine and restitution. To call corporations alter egos is to say that they are one—that a single business uses a variety of corporate names and charters but is still just one entity. Many cases hold that corporations cannot escape their obligations under judgments entered by federal courts by playing a shell game with assets. E.g., *Reich v. Sea Sprite Boat Co.,* 50 F.3d 413 (7th Cir.1995). If the court enters an injunction, then Fed.R.Civ.P. 65(d) makes it clear that the legal obligation applies to alter egos: an injunction binds "the parties to the action, their officers, agents, servants, employees, and attorneys, and ... those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Criminal statutes and rules lack a precise parallel to this language—it would be troubling to treat the employees of a corporation as liable for its criminal fines— but § 3613A(a)(1) offers the district court quite enough power to dip into a corporate purse held by a defendant's alter egos.

To say that it is *possible* to reach the assets of alter egos in the criminal case is not to say that it is wise. Often it would be better to commence bankruptcy proceedings against the defendant, so that preferential transfers may be recovered and priority among debts resolved in a comprehensive proceeding, or to use a fraudulent-conveyance action to retrieve assets to satisfy the judgment. The United States has commenced an action of the latter type against Nutritional Products and Animix. Still, for a

corporation in a case such as this the difference between civil and criminal law is small. Corporations cannot be imprisoned. Only money is at issue. All we need to decide today is whether the district judge has the power to treat additional corporations as a defendant's alter egos and thus to resolve payment questions within the criminal case. Appellants do not contend that, if the power exists, this was a poor occasion for its exercise. They make an all-or-none stand, and § 3613A(a)(1) prevents them from enjoying the complete victory they crave.

Two further arguments require only brief comment.

■ First, appellants contend that the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001–3308, provides the exclusive means to collect debts due to the federal government. This statute, which covers fraudulent conveyances (among other things), indeed has exclusivity language. 28 U.S.C. § 3001(a). Appellants get here and stop. But the next subparagraph declares if "another federal law supplies procedures for recovering on a claim or a judgment for a debt arising under such law, those procedures shall apply". Section 3003(b)(2) adds that "[t]his chapter shall not be construed to curtail or limit the right of the United States ... to collect any fine, penalty, assessment, restitution, or forfeiture arising in a criminal case". Appellants ignore these provisos, which are dispositive against them.

■ Second, appellants contend that under *Peacock v. Thomas,* 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996), federal courts cannot collect debts by piercing the corporate veils of judgment debtors. This is a considerable overstatement, for *Peacock* dealt with a new suit rather than an effort to collect a judgment under the ancillary jurisdiction as part of the original suit. See *Wilson v. Chicago,* 120 F.3d 681, 683–84 (7th Cir.1997); *Citizens Electric Corp. v. Bituminous Fire & Marine Insurance Co.,* 68 F.3d 1016 (7th Cir.1995). The Court "has approved a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments—including attachment, manda-

mus, garnishment, and the pre-judgment avoidance of fraudulent conveyances." *Peacock*, 516 U.S. at 356, 116 S.Ct. 862. Here, too, the prevailing party is trying to enforce its judgment through additional proceedings in the original case. But this is by the by, for the United States does not need to proceed under ancillary or supplemental jurisdiction. The United States *always* gets to litigate in its own courts. See 18 U.S.C. § 3231, 28 U.S.C. § 1345. Any effort to collect a debt due to the United States presents a claim under federal law, although state law may supply the substance of that federal law. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). Federal jurisdiction therefore is secure.

AFFIRMED.

CUDAHY, Circuit Judge, dissenting.

The district court has granted a stay in this case, and there is no reason to believe that we have acquired jurisdiction of an appeal. *Albiero v. City of Kankakee*, 122 F.3d 417 (7th Cir.1997), bears some relevance here, but it is certainly not controlling. In *Albiero*, the district court gave the plaintiff the standard 21 days to amend his complaint. At the end of 21 days the judgment of dismissal would become final and appealable, and a notice of appeal filed before the 21 days had expired became effective at the expiration of the period.

Here Judge Curran gave Nutritional Products, Animix *and Vitek* 90 days to show cause why these companies should not be considered alter egos: "[W]ithin ninety (90) days of the date of this order, *Vitek* and its alter egos *shall pay the fine and restitution* as ordered at sentencing or *shall appear and show cause*, if any they have, why they should not be held responsible for the continuing violation of Vitek's terms of supervised release" (emphasis added). Before the 90 days had expired, the companies asked for a stay pending disposition of the appeal in this case and in the case establishing Vitek's liability on the merits. Judge Curran took the motion under advisement immediately and subsequently granted the stay. Although the language of the stay is not entirely explicit, taking it in connection with the moving papers, it surely appears to stay the 90–day period, which of course is applicable both to the show-cause requirement and to the order to pay the fine and restitution. The majority has cited no plausible reason to believe the stay applied only to the order to pay and not to the opportunity to show cause why alter ego treatment was not appropriate. Not only did Judge Curran give no signal that he was bifurcating his original order, but it would make no sense that he would do so. Certainly the rationale offered in the motion—waiting for decision in the two appeals—would not have furnished any basis for bifurcation. And the notion that the stay applied only to Vitek is highly dubious. The documents leading up to the stay, including the "Joint Reply Memorandum of Vitek, Nutritional Products, and Animix in Support of their Motions for Stay Pending Appeal," offer no support for the majority's distinction between a Vitek stay and an alter egos stay. The government never distinguished between these defendants, either in its initial memorandum opposing any stay or in withdrawing its opposition to a stay. Further, it would make no sense for the district court to stay Vitek's responsibility to pay and not the alter egos'. If the district court had intended instead to stay the order only with respect to Vitek, it would have said so directly. The reasonable interpretation of the stay is that it stays the entire order, which is what both Vitek and its alleged alter egos requested.

In addition, the reasoning in *Albiero* was based on the fact that "[t]he district judge announced that the complaint was dismissed and that the suit would be over unless Albiero filed a new complaint within 21 days. In other words, *the judge stated a plan to enter a final judgment* on day 22 unless Albiero filed a particular document." 122 F.3d at 420 (emphasis added). Here Judge Curran, by taking the stay motion under advisement within the 90 days allowed by the original order, clearly demonstrated that he had at most only a tentative plan. He thus precluded the possibility of a final and appealable order's issuing even though he did not decide to grant the motion until some time later. Here it simply cannot be said, as this court

did in *Otis v. City of Chicago*, 29 F.3d 1159, 1165 (7th Cir.1994) (en banc), discussing a conditional dismissal, that "the order is 'final' by any standard other than one making the entry of a Rule 58 [final] judgment indispensable" or that the order is obviously a "final 'decision[ ]' that [is] not [a] final 'judgment[ ].' " *Id.* After all, the 90–day period is not some statutory limitation; it is a period provided by the district court, which that court can modify as it sees fit. And until the district court has completed its consideration of these matters, there is no final order ripe for appellate review. An order does not become final just because a notice of appeal has been filed. Whatever the precise meaning of the order entering the stay, when the district court entertained the motion for a stay, deferral of Vitek's and its alter egos' opportunity to show cause was clearly on the table. That is how the government understood the situation when it initially opposed a stay:

> [I]t is time to schedule this matter for a show cause hearing.... Vitek and its alter egos .... will have an opportunity to present other evidence to the Court in defense of either a contempt sanction or the entry of an enforceable judgment against them.
>
> At the conclusion of that hearing, and in the event that the [district] Court holds against Vitek and its alter egos, they can at that time again ask this Court for a stay before any of the adverse consequences of the Court's decision have any impact upon them. *At this stage, however, all we are about to hold is a hearing.*

Gov't's Mem. in Opp'n to Mot. for Stay Pending Appeal 2–3 (emphasis added). The government thus sought the denial of the stay because it believed that the stay would postpone the hearing. Now the opportunity for a show cause hearing, which both sides anticipated, apparently has been precluded by the majority on the dubious theory that the district court failed to enter a temporary stay on day 90 while it considered whether to enter a regular stay. This treatment seems to me to be manufacturing technicalities out of whole cloth.

I believe that the majority has rushed to judgment here relying on an indefensible reading of district court procedure and has taken the matter out of the hands of the district court, which for whatever reason has elected to allow postponement of the promised hearing. Since we have no jurisdiction, I will not comment on the majority's discussion of the merits.

*Albiero* certainly does not dispose of these complex facts, and I therefore respectfully dissent.